[Civil No. 4820. Filed May 23, 1945.]

[159 Pac. (2d) 292]

THE VALLEY NATIONAL BANK OF PHOENIX, a National Banking Association, Appellant, v. CHARLES M. GLOVER, JR., by Herbert Mallamo, His Guardian *Ad Litem;* BEULAH ANITA GLOVER, RUEBEN N. MAUTZ, and RUBY LANELL MAUTZ, by Herbert Mallamo, Her Guardian *Ad Litem,* Appellees.

540

Messrs. Gust, Rosenfeld, Divelbess and Robinette, for Appellant.

Mr. Herbert Mallamo, for Appellees.

Mr. Walter Roche and Mr. Allan K. Perry, Attorneys *Amici Curiae.*

MORGAN, J.—In June, 1944, Congress adopted the "Servicemen's Readjustment Act of 1944." The law as approved by Congress appears as Chapter 268, Public 346, 78th Congress, Second Session. It is incorporated in the U. S. Code Ann., Title 38, Sections 693

to 697e, both inclusive. Title III of the act provides for loans for the purchase or construction of homes, farms and business property to eligible veterans. For a proper understanding of the issues raised on this appeal, it will be helpful to refer to the pertinent provisions of this act. We quote from Section 500:

"(a) Any person who shall have served in the active military or naval service of the United States at any time on or after September 16, 1940, and prior to the termination of the present war and who shall have been discharged or released therefrom under conditions other than dishonorable after active service of ninety days or more, or by reason of any injury or disability incurred in service in line of duty, shall be eligible for the benefits of this title. Any such veteran may apply within two years after separation from the military or naval forces, or two years after termination of the war, whichever is the later date, but in no event more than five years after the termination of the war, to the Administrator of Veterans' Affairs for the guaranty by the Administrator of not to exceed 50 per centum of a loan or loans for any of the purposes specified in Section 501, 502 and 503: Provided, That the aggregate amount guaranteed shall not exceed $2,000. If the Administrator finds that the veteran is eligible for the benefits of this title and that the loan applied for appears practicable, the Administrator shall guarantee the payment of the part thereof as set forth in this title.

"(b) Interest for the first year on that part of the loan guaranteed by the Administrator shall be paid by the Administrator out of available appropriations. No security for the guaranty of a loan shall be required except the right to be subrogated to the lien rights of the holder of the obligation which is guaranteed: Provided, That pursuant to regulations to be issued by the Administrator the mortgagor and mortgagee shall agree that before beginning foreclosure proceedings for default in payment of principal or interest due, the Administrator shall have at least thirty days' notice with the option of bidding in the property on

foreclosure or of refinancing the loan with any other agency or by any other means available.''

Under the provisions of Subsection (c) loans guaranteed by the Administrator are payable under such terms and conditions as may be approved by him. The interest charged cannot be more than 4 per cent per annum. The whole loan is to be payable within twenty years.

Section 501 provides for purchase or construction of homes. Pursuant to Subsection (a) the proceeds of such loans may be used for the purchase of residential property, construction of a dwelling on unimproved property, subject to the approval of the Administrator upon finding: (1) that the proceeds of such loans will be used for the payment of the property to be purchased or constructed. (2) That the terms of payment required in any mortgage to be given in part payment of the purchase price or construction cost bear proper relation to the veteran's present and anticipated income and expenses, and that the property is suitable for dwelling purposes. (3) That the price to be paid for the property or construction does not exceed the reasonable normal value. The section specifically provides:

''(c) No first mortgage shall be ineligible for insurance under the National Housing Act, as amended, by reason of any loan guaranteed under this title, or by reason of any secondary lien upon the property involved securing such loan.''

Somewhat similar provisions appear in Sections 502 and 503, which authorize the guaranteeing of loans to eligible veterans for the purchase of farms and farm equipment and business property.

Section 505 (a) contains the following:

'' . . . In any case wherein a principal loan, for any of the purposes stated in Section 501, 502, or 503, is approved by a Federal agency to be made or guar-

anteed or insured by it pursuant to applicable law and regulations, and the veteran is in need of a second loan to cover the remainder of the purchase price or cost, or a part thereof, the Administrator, subject otherwise to the provisions of this title, including the limitation of $2,000 on the total amount which may be guaranteed, may guarantee the full amount of the second loan; Provided, That such second loan shall not exceed 20 per centum of the purchase price or cost and that the rate of interest thereon shall not exceed that on the principal loan by more than 1 per centum: And provided further, That regulations to be promulgated jointly by the Administrator and the head of such agency may provide for servicing of both loans by such agency and for refinancing of the principal loan to include any unpaid portion of the secondary loan with accrued interest, if any, after the curtailment thereon equals twice the amount of the secondary loan.''

The age of majority in Arizona is 21. It became evident to the legislature that many of the veterans who might be eligible for benefits under the federal law would be barred from accepting its benefits through minority. Under the law of Arizona all property acquired by married persons is presumed to be community. In order that a married veteran, whose wife was a minor, could avail himself of the privileges of the act, the disability of such minor spouse would also have to be removed. To meet this situation, the legislature adopted House Bill 170, now appearing as Chapter 48, Session Laws, Regular Session, 17th Legislature, 1945, with the emergency clause. It was approved by the governor and became effective on March 8, 1945. The law eliminating the emergency clause is as follows:

"An Act Relating to veterans; providing that minority shall not be a legal disability in receiving servicemen's benefits; and declaring an emergency.

"Section 1. *Minority not a disability.*—No veteran entitled to benefits under the provisions of the serv-

icemen's readjustment Act of 1944 (Chapter 268, Public 346, 78 congress, second session), or the spouse of any such veteran, shall be under legal disability by reason of minority to make any contract, nor shall any contract made by any such veteran or spouse be invalid or voidable, by reason of the minority of such veteran or spouse.''

The appellant will be referred to as plaintiff and the appellees as defendants.

Plaintiff is a national banking association. Defendant Charles M. Glover, Jr., is a minor, aged 20 years. Buelah Anita Glover is his wife, aged 22 years. Defendant Rueben N. Mautz is aged 24 years. Ruby Lanell Mautz is his wife, aged 20 years. The defendants Charles M. Glover, Jr., and Rueben N. Mautz are veterans of the present world war, eligible for and entitled to benefits of the Servicemen's Readjustment Act of 1944. Glover and his wife made application to plaintiff for a loan to be made under the provisions of the Servicemen's Readjustment Act, and for a loan to be made under the National Housing Act, 12 U. S. C. A. § 1701 *et seq.,* offering as security for the payment of such loans mortgages on real estate, title to which has been or is to be taken by them through deed and on a building yet to be constructed on such real estate from the proceeds of the loans. Similar application was made by Mautz and his wife. The administrator of Veterans' Affairs found that both Glover and Mautz were veterans eligible for the benefits of the Servicemen's Readjustment Act and approved the applications for guaranty of the first-mentioned loans. The Federal Housing Administrator made commitment to insure the other loans under the National Housing Act. The buildings on the premises to be so acquired by the veterans are to be constructed by contractors under a contract to be made between such contractors and veterans and their spouses who also proposed to make, execute and deliver to the plaintiff

notes evidencing the loans, with mortgages on the real estate to secure their payment. The plaintiff entered into an agreement with the defendants, under which it agreed to make to the Glovers a loan of $4,800 to be insured by the Federal Housing Administration, and a further loan of $1,290 to be guaranteed by the Administrator of Veterans' Affairs, being a total of $6,090. It agreed to loan to the defendants Mautz the sum of $3,800 to be insured by the Federal Housing Administration, and $950 to be guaranteed by the Administrator of Veterans' Affairs, being a total of $4,750. All loans had been approved by the Administrator of Veterans' Affairs, and commitment made by the Federal Housing Administrator for insuring such loans under the Federal Housing Act.

The contract was subject to these conditions: (1) Assurances that the following instruments and contracts, either received or executed by the veterans and their wives pertaining to property secured from, or rights arising out of, the proceeds of, or in connection with, said loans, will not be invalid, voidable or subject to disaffirmance by the minors by reason of minority, (a) deeds (b) contracts for construction, (c) notes and mortgages, (d) assumption of mortgage or indebtedness, (e) contract of sale or deed; (2) That the said minors are under no legal disability by reason of minority to enter into the contracts mentioned in (1), *supra;* (3) That the said minors are not under any disability by reason of minority to make any other contract relating to their community or separate property, or otherwise, and that no such contract, made by either of them will be invalid or voidable or subject to disaffirmance by either by reason of minority.

Plaintiff filed its complaint against the defendants for a declaratory judgment, alleging and setting forth the contract between the plaintiff and the named defendants and the facts as heretofore set forth. In its

complaint further allegations were to the effect that the defendants contend that the conditions of the contract are met by chapter 48, session laws, 1945, *supra;* that the plaintiff could not agree to such contention; that chapter 48 is unconstitutional and void, and repugnant to article 2, sections 4 and 13, and article 4, part 2, sections 13 and 19, Constitution of Arizona, and to section 1 of the 14th Amendment to the Constitution of the United States; if not unconstitutional as to the minor veteran, it is as to the minor spouse of a veteran; the law is against public policy; the legislature was without power to enact such law, and its provisions do not extend to the contractual obligations summarized above as (1), does not satisfy the requirements listed as (2), nor does it meet the requirements appearing as (3) of the conditions of the agreement. Appropriate allegations appear in the complaint to comply with the declaratory judgment law. Prayer was made for the construction of the statute, the determination of its validity and effect, and for determination of the validity of the minors' contracts. The court appointed Herbert Mallamo as guardian *ad litem* of the two minor defendants. Answer was filed by the defendants asserting the constitutionality of chapter 48 and the validity of the agreement. The trial court entered judgment declaring chapter 48 to be in all respects constitutional, not against public policy, and declaring that the legislature had the power to enact such law. The court found that the provisions of chapter 48 extended to and validated the contractual obligations mentioned in the contract; that the minors were under no legal disability by reason of minority to enter into any of the contracts therein specified, nor were the minors by reason of minority under any disability to make any other contracts relating to their community or separate property, or otherwise.

■■ Before proceeding to test the constitutionality of chapter 48, we must first determine the object and effect of the act. Does it relieve a minor veteran or the minor spouse of a veteran of all disability by reason of minority, or does it simply remove disability in connection with the benefits, which may be received under the Servicemen's Readjustment Act of 1944? If the disability is removed only as to such benefits, various objections which have been urged to the validity of the act will become ineffectual. In determining the extent and operation of the act we have to consider not only the law itself but its title. The title begins with the words "Relating to veterans" and then proceeds to qualify this general provision by the following, "providing that minority shall not be a legal disability in receiving servicemen's benefits." It is our view that the last-mentioned provision limits the operation of the act to matters coming within its purview. The act itself provides that a veteran or his spouse shall be under no legal disability by reason of minority to make "any contract nor shall any contract made by any such veteran or spouse be invalid or voidable" by reason of minority. It seems obvious to us that under the limitation contained in the title that the contracts mentioned must be confined to those which grow out of or result from benefits which may be received by servicemen. It cannot be construed as a general removal of minority disability of the veteran or the spouse. This construction is in accordance with the decisions of this court. *Taylor* v. *Frohmiller,* 52 Ariz. 211, 79 Pac. (2d) 961; *Board of Control* v. *Buckstegge,* 18 Ariz. 277, 158 Pac. 837.

In the Taylor case the title of the act appeared as "An act relating to unemployment compensation, and amending" certain specified sections of a prior law. Laws 1937, c. 68. The law, as enacted, amended a section not listed in the title. We held that the at-

tempted amendment of the section not so listed was unconstitutional and void, under article 4, part 2, section 13 of the Constitution of Arizona. We quote from the decision [52 Ariz. 211, 79 Pac. (2d) 964]:

"The title of the act plays a very important part therein for without some title there can be no valid legislation. The scope of the title is within the discretion of the legislature; it may be made broad and comprehensive, and in this case the legislation under such title may be equally broad; or, the legislature, if it so desires, may make the title narrow and restricted in its nature, and in such case the body of the act must likewise be narrow and restricted. . . .

"With these principles for our guidance, let us examine the title of the act. Had the title of the act stopped at the first comma, it would have been broad in its scope, and one who read the title would have been advised thereby that any matter relating to unemployment compensation might be found in the body of the act. But the title further states that it is amendatory of certain named sections of a certain specified act. We think the natural reaction of one who read the title would be that the only portions of chapter 13 which were to be amended were the particular sections set forth in the title of the act, and that he would be led to believe that any amendments to be made to chapter 13 contained nothing which was not germane to the matters dealt with in the sections named. . . . "

In the Buckstegge case the title of the act was "An Act Providing for an Old-age and Mothers' Pension and making appropriation therefor." Laws 1915, p. 10. The act then proceeded to abolish all almshouses within the state, directing that the grounds and buildings be sold and the proceeds devoted for the purposes therein set forth. The court said [18 Ariz. 277, 158 Pac. 840]:

" . . . The title is limited to providing pensions for old-aged persons and mothers—it does not directly or indirectly refer to the subject of almshouses or county hospitals. . . .

"If the title of the act had been: 'An act to abolish county hospitals or poor farms, to abolish the contracting of the care of the indigent sick and poor and to provide in lieu thereof a pensioning system for the aged, the indigent sick and poor and for widows with dependent children and wives of husbands in prison and insane asylums with children looking to them for support and making appropriations therefor,' it would have been as broad as the legislation, and would have been notice to the voters, and not calculated to mislead them. It would seem that this act, in attempting to abolish the county hospital system for the sick and needy, is palpably a violation of that provision of the Constitution that requires the subject to be set out in the title of the act, and that the legislation shall be confined to that subject and matters properly connected therewith, inasmuch as no reference is made to such institutions by name or as almshouses or otherwise in the title."

■■ The rule is established in this jurisdiction that any provision directly or indirectly relating to the subject expressed in the title, having a natural connection with and not foreign thereto, is embraced within it. *Board of Regents* v. *Sullivan,* 45 Ariz. 245, 42 Pac. (2d) 619; *Hancock* v. *State,* 31 Ariz. 389, 254 Pac. 225; *State* v. *Davey,* 27 Ariz. 254, 232 Pac. 884; *In re Miller,* 29 Ariz. 582, 244 Pac. 376. The law is of general application relieving the minor veteran and spouse of all disability to make contracts, and validates all such contracts. Inasmuch as we hold that the title of this act is, in effect, that minority shall not be a legal disability in receiving servicemen's benefits, under the rule alluded to and the broad provisions of the act, the statute must be construed to include every character of contract either directly or indirectly relating to or having any natural connection with the receiving or enjoyment of servicemen's benefits. So construed, it is evident that the minor veteran or his spouse has the right not only to make any contract which may be necessary or required to enable the

veteran to secure benefits, but also in connection with the use of such benefits. It follows, therefore, that when a loan is secured under the provisions of the Servicemen's Readjustment Act, and for any of the purposes mentioned therein, the minor, by the provisions of chapter 48, has full and complete contractual rights relative thereto. He may receive deeds, execute notes and mortgages in connection with such property. He may sell or dispose of it. He may assume mortgages or other obligations in connection with the loan or property acquired. If the loan is for a business purpose, he has the full right to execute any and all obligations or instruments that may be necessary or requisite in connection with the transaction of such business. Such contracts being neither invalid nor voidable by reason of minority, may not be disaffirmed by the minor.

■ To avoid any confusion, we mention in passing that the provision in the law relative to the minor spouse of a veteran comes within the terms of the title for the reasons already stated. Removal of the minor spouse's disability is necessary to allow the veteran to receive and enjoy the benefits of the Servicemen's Readjustment Act. It has a natural connection with the subject expressed in the title.

■ What we have said disposes of the objection that the act is repugnant to article 4, part 2, section 13 of the Arizona Constitution. The act, as construed, embraces but one subject and matters properly connected therewith. The law, as enacted and interpreted, conforms to the title. The contention of unconstitutionality under this provision of the constitution is without force.

It is claimed by plaintiff that the law is unconstitutional and void in that it violates the "due process" and "privileges or immunities" and "equality" provisions of the Constitution of Arizona, and section 1

of the 14th Amendment to the Constitution of the United States, and also the state constitutional inhibition against special laws. In support of this it is urged that the act is arbitrary and unreasonable, discriminating against some minors and favoring others. The argument is that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances, and that no greater burdens should be laid upon one than are laid upon others in the same calling and condition. Plaintiff's conclusion is that the legislature was without power to adopt an act which, on the one hand, allows a certain class of minors to receive benefits and make valid contracts to the exclusion of other minors, and on the other hand takes away from the one class of minors the right of disaffirmance which is retained by all other minors.

In support of its position there are cited a great number of decisions to the effect that classifications exempting veterans from payment of license taxes and from civil service examinations, are void as repugnant to the various constitutional provisions mentioned. Plaintiff argues at length that the right of a minor to disaffirm a contract is a liberty having the sanctity of age, that the withdrawal of this right results in hostile or discriminating legislation which imposes a burden on the minors covered by the act, while all other minors are relieved from such burden. It is asserted that the legislature was not compelled to confine the law to minor veterans but could have relieved all veterans of disability to make contracts. It is claimed that since a general law was applicable, the law comes within the constitutional inhibition against special laws. We cannot agree with any of these contentions.

 The statute deals with substantive rather than procedural rights. Due process, when applied to substantive rights, is interpreted to mean that the state is without right to deprive a person of life, liberty or property by an act that has no reasonable relation to any proper governmental purpose, or which is so far beyond the necessity of the case as to be an arbitrary exercise of governmental powers. *Albritton* v. *City of Winona,* 181 Miss. 75, 178 So. 799, 115 A. L. R. 1436. As applied to legislative enactments, due process of law means only that statutes shall be general in operation and affect the rights of all who should properly be brought within their provisions. *Barrington* v. *Barrington,* 206 Ala. 192, 89 So. 512, 17 A. L. R. 789.

 Due process of law does not prohibit classification for legislative purposes. 16 C. J. S., Constitutional Law, § 569:

"The guaranty of 'due process of law'· or 'law of the land' has often been considered in connection with class legislation, it generally being held that the guaranty does not prohibit classification for the purpose of legislation, provided there is a natural and reasonable basis therefor, and is not arbitrary or capricious, and is based on a substantial difference between those to whom it applies and those to whom it does not apply, and provided the law is so framed as to extend to and embrace equally all persons who are or may be in the like situation and circumstances."

The following cases are cited in support of the text: *Lloyd Garretson Co.* v. *Robinson,* 178 Wash. 601, 35 Pac. (2d) 504; *Pauly* v. *Keebler,* 175 Wis. 428, 185 N. W. 554; *Schaaf* v. *South Dakota Rural Credits Board,* 39 S. D. 377, 164 N. W. 964; Barrington v. Barrington, *supra.*

 What are the privileges or immunities which are protected by the constitutional provisions invoked? The privileges and immunities protected by the 14th Amendment are those only which owe their

existence to the federal government, its national character, constitution or laws. It also requires the state to give to a citizen of the United States, who becomes a resident of that state, the same rights, privileges and immunities secured by its constitution to its own citizens. Under the state provisions, laws are unconstitutional which violate the inhibition against the granting of special privileges or immunities. The purpose of these constitutional provisions are obviously to preserve equality between citizens and to secure equality of opportunity to all persons similarly situated. *Stults Eagle Drug Co.* v. *Luke,* 48 Ariz. 467, 62 Pac. (2d) 1126; *Prescott Courier, Inc.,* v. *Moore,* 35 Ariz. 26, 274 Pac. 163; *State ex rel. Bacich* v. *Huse,* 187 Wash. 75, 59 Pac. (2d) 1101. Neither the federal nor the state provisions relating to privileges and immunities prohibit the legislature to classify objects or persons who may become subject to the provisions of a law to the exclusion of others. The rule is stated in 16 C. J. S., Constitutional Law, § 489, as follows:

" . . . if the legislature has power to deal with the subject matter of the classification, and there is a reasonable ground for the classification and the law operates equally on all within the same class, it is valid, even though the act confers different rights or imposes different burdens on the several classes, or fails to provide for future contingencies, or though particular persons find it difficult or even impossible to comply with conditions precedent on which the enjoyment of the privilege is made to depend." *Laney* v. *State,* 20 Ariz. 416, 181 Pac. 186.

The equal protection clauses of the 14th Amendment and the state constitution have for all practical purposes the same effect. They constitute a guaranty that all persons subject to state legislation shall be treated alike under similar circumstances and conditions in privileges conferred and liabilities imposed. They guarantee only the protection enjoyed by

other persons or classes in the same place or situation and under like circumstances. 16 C. J. S. Constitutional Law, § 502; *People* v. *England,* 140 Cal. App. 310, 35 Pac. (2d) 565; *Ex parte Wilson,* 330 Mo. 230, 48 S. W. (2d) 919. It follows that legislation may be limited in scope and adjusted to various situations. If it makes no arbitrary or unreasonable distinction within the sphere of its operation and accords substantially equal and uniform treatment to all persons similarly situated, the law complies with the equality provisions. *State* v. *Safeway Stores,* 106 Mont. 182, 76 Pac. (2d) 81; *Goodale* v. *County Com'rs of Worcester,* 277 Mass. 144, 178 N. E. 228. Thus both classification and discrimination or distinction may be made in a law, provided the discrimination or distinction has a reasonable foundation or rational basis and is not entirely arbitrary. 16 C. J. S., Constitutional Law, § 505. Inequality, to have the effect of invalidating a law, "must be arbitrary, unreasonable, oppressive, and not properly within the wide field of choice allowed to the legislature. Exact or perfect equality in a law is not required or always possible; and there is constitutional equality where there is practical equality or reasonable conformity in dealing with persons similarly circumstanced." The equality clauses do not prevent a state from resorting to classification for legislative purposes and confining such legislation to a certain class "prescribing different sets of rules for different classes, or discriminating in favor of, or against, a certain class, provided the classification or discrimination is reasonable, rather than arbitrary, and rests on a real and substantial difference or distinction which bears a just and reasonable relation to the legislation or the subject or object thereof, and provided also the legislation operates equally, uniformly, and impartially on all persons or property within the same class." 16 C. J. S., Constitutional Law, § 505.

■ Based upon the general principles pertaining to classification which have been referred to, it seems to us that the classification of veterans for the purposes mentioned in the Readjustment Act is entirely constitutional. The provision that it shall apply to all veterans not dishonorably discharged or released, who have served at least ninety days, including those discharged by reason of disability, seems to us to be wholly reasonable. The whole purpose of the act is to assist the veteran in readjusting himself to civilian life. Those who have served for not more than ninety days would obviously not be confronted with the same problems as those whose civilian ties have been severed for a longer period. No one, we think, will question the wisdom of the general classification of veterans for benefits which may be legally and reasonably granted to them. Their service has been of such a character as to place them in a class deserving of special consideration.

There are many cases which hold that the classification of veterans for special reward or consideration is entirely constitutional and proper, and not subject to inhibitions imposed by the fundamental law. Thus the legislature may give preference in employment to war veterans. *Swantush* v. *City of Detroit,* 257 Mich. 389, 241 N. W. 265. Statutes providing for the payment of a bonus to soldiers and sailors of the first world war have been held to be a valid exercise of the legislative power. *State* v. *Davis,* 113 Kan. 4, 213 Pac. 171. Likewise, statutes providing for state loans to settlers, with preference to soldier applicants, have been held to be constitutional. *Wheelon* v. *South Dakota Land Settlement Board,* 43 S. D. 551, 181 N. W. 359, 14 A. L. R. 1145. A law providing for a bond issue to raise money for loans to war veterans is constitutional. *Hinton* v. *Lacy,* 193 N. C. 496, 137 S. E. 669. An act permitting veterans to secure license to peddle

merchandise in the state is a proper exercise of legislative power. *Strauss* v. *Borough of Bradley Beach,* 117 N. J. L. 45, 186 Atl. 681, affirmed 118 N. J. L. 561, 194 Atl. 160. There is a conflict in the authorities as to the validity of statutes exempting veterans from the payment of license taxes. While the weight of authority is that this may not be done, the later decisions, although in the minority, disclose the trend to be that such statutes are constitutional. *Farley* v. *Watt,* 165 Okl. 6, 23 Pac. (2d) 687. In the exercise of its right to promote the general welfare of persons within its jurisdiction the legislature may constitutionally require preference in appointments to office to be given to veterans who have served in the army or navy. *People* v. *Brady,* 262 Ill. 578, 105 N. E. 1; *Shaw* v. *Marshalltown,* 131 Iowa 128, 104 N. W. 1121; *State* v. *Addison,* 76 Kan. 699, 92 Pac. 581; *Mayor of Lynn* v. *Com'r of Civil Service,* 269 Mass. 410, 169 N. E. 502; *Gianatasio* v. *Kaplan,* 257 N. Y. 531, 178 N. E. 782.

▪ This brings us to the classification of the minors. May the minor veterans and their spouses be placed in a different class for contractual purposes than other minors? The rule seems to be that in the absence of express constitutional restrictions the legislature may declare a minor of full age for the purpose of making contracts. *Dickens* v. *Carr,* 84 Mo. 658. The age of majority is not fixed by the constitution, and there is no constitutional restriction which would prevent a change of the age of majority. Section 1–103, Arizona Code Annotated 1939, provides:

" 'minor' means any person under the age of twenty-one (21) years; and, 'age of majority,' or, 'majority,' used in reference to age, means of the age of twenty-one (21) years or upward."

We have .held under this act that a person under the age of twenty-one years does not have the capacity to enter into binding contracts except for necessaries.

*Worman Motor Co.* v. *Hill,* 54 Ariz. 227, 94 Pac. (2d) 865, 124 A. L. R. 1363. We think it has never been questioned in this jurisdiction that minors may be so classified as to allow certain classes to enter into valid contracts to the exclusion of others. Thus, before the adoption of the law above referred to, it was the rule in Arizona that a married woman, if above the age of eighteen years, was wholly competent. By Section 63–104, Arizona Code Annotated 1939, a female aged eighteen years may enter into a valid contract of marriage with a male at least twenty-one years of age. In Section 63–201, Arizona Code Annotated 1939, it is provided that a minor capable of contracting matrimony may enter into a prenuptial contract with the written consent of the parents or the survivor of them, or, if there be none, with the written consent of the guardian of such minor. In Section 52–502, Arizona Code Annotated 1939, a minor is required to pay a reasonable price for necessaries sold and delivered to him.

In *Wall* v. *Studebaker Corporation,* 219 Mich. 434, 189 N. W. 58, the supreme court of Michigan held a law valid giving a minor, who was employed in an industry subject to the Workmen's Compensation Act, the same power to contract as an adult employee. The rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right, and that the legislature has full power to fix and change the age of majority. *In re Morrissey,* 137 U. S. 157, 11 Sup. Ct. 57, 34 L. Ed. 644; *Springstun* v. *Springstun,* 131 Wash. 109, 229 Pac. 14, 40 A. L. R. 595; 27 Am. Jur. 748, sec. 5.

It is our view that the legislature had the right to classify minor veterans and their spouses to the exclusion of other minors, and the grant of right to make contracts, as we have heretofore construed the statute, is in all respects constitutional.

█ The rule allowing a minor to disaffirm contracts results from the invalidity or voidability of such contract. The right of disaffirmance is in no sense a vested right. If the legislature has the power to decrease the age of majority, which it has, it follows that contracts which may be entered into by a person of such legal age are valid. They may not be disaffirmed on the ground of minority. It is said in 27 Am. Jur. 757, sec. 14:

"If the statutes of a state or of the United States expressly permit a certain class of agreements to be made by infants, such statute, of course, settles the question and makes the agreement absolutely valid. In such a case, the right of avoidance of the contract does not exist."

No legal discrimination results, nor is the minor deprived of any vested right when his right to avoid a contract is thus abrogated.

██ The law under consideration does not, in our judgment, come under the condemnation of article 4, part 2, section 19, subdivision 13 or 20. It is in no sense a special law. The purpose of subdivision 13 is to secure equality and equal opportunity to all those similarly circumstanced. This is what the law does. There is no manifest intent to discriminate in favor of a particular class of citizens to the exclusion of others similarly circumstanced. The objection that the act is void as being in contravention of subdivision 13 is fully answered by the decision of this court in *Haddad* v. *State*, 23 Ariz. 105, 118, 201 Pac. 847. Nor does the law violate subdivision 20. The law is general in so far as the purposes of the Veterans' Readjustment Act can be served. A general act removing disability from all minors could not well be made applicable. The doctrine is established "that the legislature is the sole judge whether a provision by a general law is possible under a" constitutional provision that no special law

shall be enacted where a general law can be made applicable. The legislature did not abuse its discretion in removing the disability of minor veterans and their spouses alone. *Fairfield* v. *Huntington,* 23 Ariz. 528, 205 Pac. 814, 22 A. L. R. 1438.

 In the brief of *amici curiae,* it is urged that the law is void as an attempted delegation of the legislative power of the state to the United States Veterans' Administrator, in violation of article 3, and of section 1 of article 4, pt. 1, Arizona Constitution. It will be observed from the reference which we have already made to the Servicemen's Readjustment Act that there is no discretion in the Veterans' Administrator with respect to those who may be entitled to benefits under that act. The federal law declares a, policy, provides a standard, and fixes the legal principles which are to control in the designation of those entitled to benefits. The standard is definite and certain. Only matters of detail are left to the Administrator. Under such circumstances, chapter 48 cannot be construed as a delegation of the legislative power of the state. *Buehman* v. *Bechtel,* 57 Ariz. 363, 114 Pac. (2d) 227, 134 A. L. R. 1374; *Panama Refining Co.* v. *Ryan,* 293 U. S. 388, 55 Sup. Ct. 241, 79 L. Ed. 446; *A. L. Schechter Poultry Corporation* v. *United States,* 295 U. S. 495, 55 Sup. Ct. 837, 79 L. Ed. 1570, 97 A. L. R. 947; *Mutual Film Corporation* v. *Industrial Comm.,* 236 U. S. 230, 35 Sup. Ct. 387, 59 L. Ed. 552, Ann. Cas. 1916C, 296; *Sabre* v. *Rutland R. Co.,* 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269; *McGrew* v. *Industrial Comm.,* 96 Utah 203, 85 Pac. (2d) 608; *Railroad Comm.* v. *Alabama Northern R. Co.,* 182 Ala. 357, 62 So. 749; Crawford, Statutory Construction, 26–27.

The act is in no sense a delegation of power. In effect, it does adopt the provisions of the Servicemen's Readjustment Act for the purpose of determining those who are entitled to benefits. This is entirely

proper. *Ex parte Lasswell*, 1 Cal. App. (2d) 183, 36 Pac. (2d) 678; *Ex parte Kinney*, 53 Cal. App. 792, 200 Pac. 966; *Wayman* v. *Southard*, 10 Wheat. 1, 6 L. Ed. 253.

"The adoption of the statutes of another state or of Congress is frequently attacked as being a delegation of legislative power. Such adoption, however, is almost universally sustained when the foreign law as then existing is adopted as the law of the adopting state." Sutherland Statutory Construction, 3d Ed., vol. 1, p. 68, sec. 310.

We conclude that chapter 48, Laws of 1945, *supra,* is not objectionable nor repugnant on any of the constitutional grounds raised.

In accordance with the views we have expressed, subdivision 13 of the judgment of the trial court is modified to read as follows:

"That neither the said Charles M. Glover, Jr., nor the said Ruby Lanell Mautz are under any disability by reason of minority to make any other contract directly or indirectly relating to or having any connection with the receiving or enjoyment of servicemen's benefits, and that no such contract made by either of them is or will be invalid or void or subject to disaffirmance by either of them by reason of minority."

The judgment, as so modified, is affirmed.

STANFORD, C. J., and LaPRADE, J., concur.