Argued September 11; reversed September 25, 1945

## CHAPMAN *v.* CHAPMAN

(161 P. (2d) 917)

Before BELT, Chief Justice, ROSSMAN, KELLY, BAILEY, LUSK, BRAND and HAY, Associate Justices.

*Robert A. Bennett,* of Portland, for appellant.

*Virgil A. Crum,* of Portland (Crum, Dusenbery & Martin, of Portland, on the brief), for respondent.

BELT, C. J.

This is a contest over the custody of two children born as the result of a marriage, on August 9, 1926, between the parties hereto. The boy, Gaylord, is twelve years of age and his sister, Colleen, is fourteen. After over seventeen years of married life, the plaintiff, on March 28, 1944, obtained a decree of divorce against the defendant on the ground of cruel and inhuman treatment and was awarded the custody of the children. The defendant defaulted in the divorce proceeding. It was stipulated, however, between the parties that in the event the plaintiff secured a divorce, the permanent custody of the children should be awarded to her and that the defendant would pay for their care and support forty dollars per month for each of them. The stipulation relative to support of the children was incorporated in the decree of divorce.

On November 24, 1944, the decree, on motion of the defendant, was modified by awarding the custody of the children to him and discharging his obligation to pay support money while the children remained in his custody. From this order of modification, the plaintiff appeals.

Both parties have remarried. For obvious reasons, there is much evidence in this record which will not be discussed. Needless to say, the children are the innocent victims of a wrecked home.

If this record reflects anything, it shows that plaintiff was a good mother to these children and that she loved them with all of her heart and soul. There is not a scintilla of evidence tending to show to the contrary.

The divorce was brought about by the misconduct of the defendant. It will be remembered that at the time of the divorce decree defendant stipulated that plaintiff was a fit and proper person to have the custody of these minor children. The pertinent inquiry, therefore, is whether there has been since the decree, such a substantial change of conditions, affecting the welfare of the children, as to justify awarding custody of the children to the defendant. In other words, does the record show that the father now has become the proper person to care for these children and that the mother is unfit to do so.

To the credit of the defendant, it can be said that he has never challenged the moral character of his former wife. About one month prior to the divorce, defendant wrote to the plaintiff about such contemplated proceeding, saying, ''Please don't take this (divorce) too hard for it is better for you and me. You are a good woman and will find true happiness with some one deserving of you. * * * I wasn't worth one of your tears.'' Notwithstanding the devotion of plaintiff for her then husband, defendant was not content to remain faithful, but lavished his affections on other women to such an extent that plaintiff became heart-broken. Often-times she would slip away from her children to cry bitterly over the breaking up of her home. She lost much weight and was unable to sleep. Her condition became so serious that she was without doubt in danger of losing her mind. At various times, while in this highly emotional and neurotic state, she would threaten to kill herself. Plaintiff even threatened harm to the children she dearly loved. Unquestionably, the children on some occasions were fearful of their lives. During one of these ''spells'' the defendant said

he struck her for the first time to make her "snap out of it".

On April 22, 1944—being less than a month after the divorce decree was rendered—the children called defendant's mother on the telephone, saying in substance that their mother had threatened to kill herself and that they were afraid. The grandmother communicated this information to the defendant and he went to the home of his former wife—who at that time was working in a dental office—for the purpose of taking the children to his mother's home in the city of Portland. The children went with their father leaving the following note for the mother to read when she returned in the evening from work:

"Dear Mother: You chased us away and we're going. We love you with all our hearts. We'll come back if you find out you really want us. Please be good and don't try to be foolish. Lovingly, your darlings Colleen and Gaylord. We'll be back. We love you and weren't deserting you. We left most of our stuff here because we'll be back."

(Signed)   Colleen and Gaylord

■ We think it is shown with reasonable certainty that the children left their mother's home of their own volition and that they were actually in fear of her. It is equally well established that defendant has never desired to deprive plaintiff of the permanent custody of the children but, at the time in question, was acting for their welfare. There was no substantial ground on which to charge the defendant with contempt of court in violating the terms of the divorce decree. The circuit court acted properly in dismissing this proceeding. The charge of contempt against defendant, however, did not justify him in asking for the perma-

nent custody. He had no home for the children. His mother was over sixty-six years of age and, while she was willing to help care for the children in an emergency, was in no position to assume the responsibility of permanent custody.

Defendant married again in Vancouver, Washington, on October 6, 1944,—it being his second wife's fourth matrimonial venture.

The present Mrs. Chapman, in response to the following question "Do you have any particular desire to take these children, to have them yourself?" thus answered: "I certainly do not. The child's place is with their mother if they can be happy there."

Since the hearing in the circuit court, both of the children have voluntarily returned to their mother who now has a good home as she remarried soon after her divorce from the defendant. Colleen has been with her mother since January 1, 1945, and Gaylord since August 1st.

Counsel for respondent, with commendable frankness, stated in oral argument that the plaintiff had now regained her mental equilibrium and was in a position properly to care for her children.

■ Without doubt, there was a period of time during which plaintiff was not a fit and proper person to have custody of the children, but that was only a temporary condition—brought about, as we have said, through the wrongful conduct of the defendant. The trial court, under such circumstances, might well have been warranted in temporarily placing their custody with some suitable third person, but we can not approve the award of permanent custody to the defendant.

■ We think the interest of all parties concerned will best be subserved by omitting in this opinion a recital

of the evidence relative to the misconduct of the defendant and his present wife, and which is believed to have been the cause of the mental disturbance of the plaintiff.

The order of modification is reversed and the cause remanded with directions to reinstate the original decree and to relieve defendant from payment of support money for the children during the time in which they were in his care and custody. Plaintiff is entitled to costs and disbursements.