460 P.2d 37

Louis **BADERTSCHER**, Appellant,

v.

Noel Faith **BADERTSCHER**, Appellee.

No. 2 CA–CIV 649.

Court of Appeals of Arizona.

Division 2.

Oct. 24, 1969.

John Aboud, Tucson, for appellant.

Knez & Glatz, by Nick Knez and Richard D. Crites, Tucson, for appellee.

HATHAWAY, Judge.

This appeal is from an order modifying child custody. The parties were divorced on March 7, 1967, and the mother was given custody of the two minor children. The father was ordered to pay child support. On April 9, 1968, the father obtained an ex parte order awarding him the custody of the children and terminating the child support payments.

On July 9, 1968, Judge Truman set aside the ex parte order and reinstated custody in the mother. In addition, Judge Truman ordered the father to pay $200 a month in child support, and attorneys fees and costs. The father was given six weeks visitation rights in the summer, and ordered to post a $500 bond prior to taking custody of the children during visitation.

Judge Truman was out of town when this matter initially came up for hearing, and due to the presence of out-of-town witnesses, and with the parties' consent, the case was assigned to Judge Fenton. While the case was before Judge Fenton, witnesses were sworn and placed under the Rule, opening statements were made, and a ruling was made on a motion to strike an affidavit. After these items occurred, Judge Fenton learned that Judge Truman was returning the following day and reassigned the case to her. In so doing, Judge Fenton stated:

"* * * it is very clear that the order of Judge Truman is very important in this case, and in view of the opening statements and the fact of what transpired before Judge Truman is apparently going to be an issue in this case * * * the right thing to do in this matter would be to refer the matter back to Judge Truman for disposition, because she, better than anyone else, knows what transpired in the hearing before her when she issued the order."

The appellant contends the Arizona Conference Corporation of Seventh Day Adventists v. Barry, 72 Ariz. 74, 231 P.2d 426 (1951), applies and controls our disposition of this matter. In that case the Supreme Court held that a request for a change of judge based on an affidavit of bias and prejudice was not timely filed after the court had heard evidence and had ruled on a motion, and thus the trial court was duty bound to proceed with the case. The court further stated that a judge may not assign a case '* * * when the judge has heard and ruled on contested matters."

In Marsin v. Udall, 78 Ariz. 309, 279 P.2d 721 (1955), the court disapproved of the *Barry* ruling that if a judge ruled on any litigated or contested matter it was too late to disqualify, and reaffirmed Stephens v. Stephens, 17 Ariz. 306, 152 P. 164 (1915). In *Marsin* the court stated:

"* * * this court is committed to the rule that if a judge is allowed to receive evidence *which of necessity is to be used and weighed in deciding the ultimate issues*, it is too late to disqualify him on

the ground of bias and prejudice." (Emphasis added) 78 Ariz. at 315, 279 P.2d at 725.

No question of bias and prejudice is presented here. The record is clear that the case was reassigned to Judge Truman in view of her former contact and familiarity with the case. The matter of assignments should not be viewed from its most technical aspects, but rather from a standpoint of substance, bearing in mind that a litigant has no right to insist that a matter be heard before any particular judge. We note that Judge Fenton conferred with the Court Administrator before making the assignment, and since no ruling has been made on any contested or litigated matter which was to be used in the final determination of the case, we conclude that the assignment was correctly made and that Judge Truman had jurisdiction to proceed as she did.

■ The father next contends that Judge Truman, in setting aside the April 9, 1968, order on the basis of Rule 60(c), 16 A.R.S., committed an abuse of discretion. Rule 60(c) provides for relief from a judgment or order taken against a party through his mistake, inadvertence, surprise, or excusable neglect. When the order was entered the appellee remained in Chicago, Illinois, where she resided with the children. The record shows that she did not have sufficient funds to return to Arizona. Based on advice from her Illinois attorney that the Arizona court did not have jurisdiction over her due to improper service, she did not defend the April 9, 1968 action. The attorney also advised her that she was in no danger of losing the custody of the children.

The appellant fails to rebut this evidence except to intimate that she should never have left Arizona in the first place, and "deliberately created the plan to ignore Arizona's authority and depends on the Illinois court's protection." Such contentions are without basis.

Viewing the record most favorably to sustaining the trial court, we conclude that

appellee's reliance on the advice of her attorney is, alone, sufficient basis for setting aside a judgment. Central Bank of Willcox v. Willcox-Pima Overland Co., 21 Ariz. 314, 188 P. 133 (1920). This being a child custody case, a full hearing on the merits is particularly appropriate, and the overall circumstances clearly justifies relief from the operation of the judgment of April 9, 1968.

■ In considering appellant's contention that it was error to award the custody of the children to the appellee, our main consideration is, of course, the children's welfare. The trial court's judgment concerning the children's best interests will not be set aside unless it clearly appears that the court abused its discretion. In re Clay, 96 Ariz. 160, 393 P.2d 257 (1964).

Although the appellee worked to support herself and the children, she always insured that the children were constantly supervised. When not at work she gave her time, love and affection to the children. She took steps to protect their health, made arrangements for schooling, provided a modest but neat and clean apartment, and she adequately fed, dressed and disciplined the children. The record tells a story of a working mother who is devoted to her children and who is doing the best possible for her children under the circumstances. Although the appellant makes several innunendos about appellee's moral fitness, the trial court apparently found them to be unfounded, nor is it for us to tell the trial judge which testimony she must believe. The custodial order is supported in the evidence.

■ The appellant states that the portion of the July 9, 1968 order dealing with child support was unjust and an abuse of discretion in that it requires him to pay support for the months of February through June, 1968. The record shows that appellant was in arrears in making support payments from February through April 9, 1968. There is nothing unjust nor is there an abuse of the court's discretion

in requiring him to pay support for the period he was legally obligated to do so.

Thus, the question is whether there was an abuse of discretion in ordering the appellant to pay support from April 9, 1968, when he received custody of the children, through June, 1968. We believe this was an abuse of the court's discretion. The appellant actually supported the children during this period and to require that he also furnish the full support payments to appellee is unwarranted. Furthermore, a court is without authority to increase child support retroactively. 27 C.J.S. Divorce § 322(1) c, p. 687; Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995, 94 A.L.R. 328 (1934). In *Adair* the court also held that an order requiring the father to pay $60 in back money to the mother, for funds she had expended for the care of the child, was unauthorized. See also Chapman v. Chapman, 177 Or. 239, 161 P.2d 917 (1945). The general rule is that a father should be allowed credit for expenditures made while the child is in his custody, where such payments constitute a substantial compliance with the spirit and intent of the decree. 2 A.L.R.2d 832–833. The order is modified to eliminate support payments from April 9, 1968 through June, 1968.

The July 9, 1968 order reinstated the appellant's support obligation at $100 a month per child. Appellant says that the court erred in not reinstating that amount with the same condition as in the separation agreement—that in the event appellee remarried the support payments were to be reduced to $50 per month per child. The separation agreement, as well as the divorce decree, does not bind the court's power to change, amend, or alter an award of child support. Gotthelf v. Gotthelf, 38 Ariz. 369, 300 P. 186 (1931); Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489, modified on other grounds, 71 Ariz. 237, 226 P.2d 142 (1951).

Before a child support order can be modified, there must be a showing of a change of circumstances. Although the appellee does not point to any specific allegations showing a change of circumstances, we believe the record, taken as a whole, and the evidence as viewed by Judge Truman, constitute a sufficient change.

The appellee now resides in a large metropolitan area where undoubtably her expenses for the children are higher. The climate in Chicago is harsher, requiring additional clothing expenses for the children. The children are nearing school age, which also will increase expenses. These factors coupled with the usual increased costs of feeding and clothing two fast growing children, appear to us as representing a sufficient sum total of changes in circumstances to allow a modification of the support order. We also deem these reasons sufficient justification for the order continuing support payments during the periods of visitation. Bradley v. Fowler, 30 Wash.2d 609, 192 P.2d 969, 2 A.L.R.2d 822 (1948).

The order of July 9, 1968, gave the appellant six weeks visitation rights during the summer, on the condition that appellant pay transportation costs to and from Illinois, and that a $500 bond be posted. Appellant contends that the trial court abused her discretion by affixing this condition.

A parent is entitled to reasonable visitation rights, McFadden v. McFadden, 22 Ariz. 246, 196 P. 452 (1921), if it is in the child's best interest. As the children reside in different states, the upheaval of their home life for more frequent periods over such a large distance, does not appear to be in their best interest. The continued and constant parental supervision of the children is encouraged, and a permanent residence with one parent appears desirable for the children. Consequently, the limitation of visitation rights to six weeks does not appear to be an abuse of discretion. The welfare of the children is the most important consideration, and if visitorial rights are not in the best interests of the children, they can be limited or completely

omitted since these rights are not for the sole benefit of one parent. Wood v. Wood, 76 Ariz. 412, 265 P.2d 778 (1954).

Requiring the appellant to pay transportation costs to and from Illinois was not an abuse of discretion. The appellee moved to Illinois with, apparently, appellant's implied consent, and due apparently to harassment by him when she lived in Arizona. She was able to secure a better job in Illinois close to her mother. She had no ties in this state except with her husband, which had been severed. Appellant receives more income than she does, and has a far greater income producing capacity.

The requirement that the appellant post a $500 bond before he exercised his visitation rights was to guarantee the return of the children to the appellee and to insure that appellant comply with the custody order. The bond was not to insure he return the children to another jurisdiction, as appellant contends, but to insure that the children be returned to appellee.

The evidence in this case showed that after the April 9, 1968, order granting custody to the appellant, he called appellee in Illinois and told her that his mother in Wisconsin was ill and he wanted to visit his mother with the children. He also stated that he failed in his attempt to get custody of the children, that he had no right to the children, and he would return them the next day. He then flew to Illinois, got the children, and went to Wisconsin without telling appellee he had been granted the custody of the children. He subsequently took the children to Arizona, and then telephoned appellee that he had the children here, he had been awarded their custody, and there was nothing she could do about it.

This and other evidence in the record convinces us that the court was justified in believing a bond was necessary. The trial court saw all the evidence and could very well have formed the conclusion that, without a bond, the appellant might not return the children to their mother. In Reardon v. Reardon, 3 Ariz.App. 475, 415 P.2d 571

(1966), the court faced the issue of visitation rights being dependent upon the husband's compliance with the payment of support. In determining whether or not a default in support payments should operate to deprive the father of visitation rights, the court said:

"Generally, in determining or limiting the visitation rights of one parent where the other parent is given custody of the minor child in a divorce decree, the matter is one which is addressed primarily to the sound discretion of the trial court. In the absence of abuse of the broad discretion which the trial court has in these matters, an appellate court will not disturb such determination. We believe that the better view is to allow the trial court in its discretion to put a limitation on visitation rights." 3 Ariz.App. at 477, 415 P.2d at 573.

We find that the requirement of posting a bond, under the circumstances of this case, was not such a limitation on visitation rights that would constitute an abuse of discretion.

The appellant states that the court's award of $500 attorney fees and costs was arbitrary and improper, and the court was without sufficient information before it to make such an award.

All the court must have before it in order to determine attorney's fees is competent evidence. Roberts v. Malott, 80 Ariz. 66, 292 P.2d 838 (1956). Although there was no direct testimony on this issue, the court had before it an extensive record, several depositions, and was aware that counsel sat through two full days of trial, and part of another day before Judge Fenton. Judge Truman also heard appellee testify she had no funds to pay the attorney's fees and costs and had to borrow money, while appellant made between $500 to $700 a month in net income. We believe that the trial court had sufficient evidence before it to rule on this matter, and an award of $500 was not arbitrary.

For the reasons stated that portion of the July 9, 1968 order requiring the appel-

lant to pay child support from April 9, 1968 through June, 1968 is deleted. In all other respects the July 9, 1968 order is affirmed.

KRUCKER, C. J., and HOWARD, J., concur.