535 P.2d 629

**Dorothy Dean STANLEY, Appellant,**

**v.**

**Larry B. STANLEY, Appellee.**

**No. I CA–CIV 2454.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 22, 1975.

Rehearing Denied June 18, 1975.

Review Granted July 14, 1975.

**38**

Flynn Kimerer Thinnes & Galbraith by John J. Flynn, Clark L. Derrick, Phoenix, for appellant.

Trew & Woodford by R. R. Woodford, Phoenix, for appellee.

## OPINION

OGG, Presiding Judge.

This appeal was instituted by appellant Dorothy Dean Stanley (Wife) to challenge the trial court's modification of a child support provision in the original divorce judgment of May 25, 1964. The pertinent portion of the original decree states that the Husband is to pay the Wife the sum of $250 per month for the support of their minor child, Larry B. Stanley, Jr. After an order to show cause hearing on March 15, 1973, the court signed a modification of the original judgment which terminated the duty of appellee Larry B. Stanley (Husband) to support his son. The termination date was to be August 9, 1972—the date his son became eighteen years old. The court found that the 1972 amendment to A.R.S. § 8–101 (effective August 13, 1972), which changed the age of majority from twenty-one years to eighteen years, was dispositive of the case.

It is the Wife's position that the amendment, enacted some eight years after the original divorce judgment, cannot operate retrospectively to modify the prior judgment and to deprive their son of his right to child support past the age of eighteen.

It is Husband's position that the amendment not only established the age of majority for all persons at eighteen years, instead of twenty-one, but also emancipated such persons. The amendment grants broad new rights. For example it allows a person eighteen years old to be a qualified elector, to be treated as an adult in the courts of this state, to run for political office, to be a member of a board of directors, to hold various licenses and to marry without parental consent. The Husband further argues that since his son is now eighteen, he is emancipated and no longer has the right to receive support payments. See Crook v. Crook, 80 Ariz. 275, 296 P.2d 951 (1956). In our opinion, it was error to terminate the child support award on Larry B. Stanley, Jr.'s eighteenth birthday.

■ It is a well established rule of law in this state that child support payments may not be altered retroactively. McClanahan v. Hawkins, 90 Ariz. 139, 367 P. 2d 196 (1961); Adair v. Superior Court, 44 Ariz. 139, 33 P.2d 995 (1934); Baures v. Baures, 13 Ariz.App. 515, 478 P.2d 130

(1970); Badertscher v. Badertscher, 10 Ariz.App. 501, 460 P.2d 37 (1969).

■ The substantive right of a child to parental support cannot be taken away by a legislative amendment in the absence of an express intention by the legislature to give such an amendment retroactive application. Strum v. Strum, 22 Ill.App.3d 147, 317 N.E.2d 59 (1974); Baker v. Baker, 80 Wash.2d 736, 498 P.2d 315 (1972); Vicino v. Vicino, 30 Conn.Sup. 49, 298 A.2d 241 (1972). A.R.S. § 1–244 reads:

"No statute is retroactive unless expressly declared therein."

It is the established law of this state that retrospective application of legislative enactments must be avoided unless there is a clearly expressed intention to the contrary. Headley v. Headley, 101 Ariz. 331, 419 P. 2d 510 (1966); Ferguson v. Superior Court, 76 Ariz. 31, 258 P.2d 421 (1953). We find nothing in the 1972 amendment to A.R.S. § 8–101 that expressly declares the new age of majority shall have retroactive application.

The Arizona case law dealing with our question is limited. In Ruhsam v. Ruhsam, 110 Ariz. 426, 520 P.2d 298 (1974), the Arizona Supreme Court interpreted a postnuptial agreement that was part of a divorce decree wherein the husband agreed to support each child until emancipated by majority. The court held that the husband was obligated to provide support to the eighteen year old child until emancipation at twenty-one years of age. The court reasoned that the contract was entered into when "majority" was legally attained at twenty-one and that the parties must have so intended. The court further held that such a support obligation was not enforceable by contempt once the child has reached eighteen. See Savage v. Thompson, 22 Ariz.App. 59, 523 P.2d 110 (1974); Cordova v. Cordova, 21 Ariz.App. 431, 520 P.2d 525 (1974). Although the reasoning in Ruhsam has some bearing on this case, we have no Arizona cases dealing squarely with the facts of this case.

Waldron v. Waldron, 13 Ill.App.3d 964, 301 N.E.2d 167 (1973), is an Illinois Appellate Court decision squarely on point. In interpreting a decree that ordered support for each of the minor children, the Illinois Court held that the father must continue support until his son reached 21 years of age, although the legislature had subsequently reduced the age of majority to 18 years. In that case the court cited cases from Kentucky which involved property settlement agreements similar to the agreement in Ruhsam. See Kirchner v. Kirchner (Ky.1971), 465 S.W.2d 299; Collins v. Collins, (Ky.1967), 418 S.W.2d 739. In reasoning that the Kentucky "property settlement agreement" cases such as Ruhsam were persuasive authority in a court-ordered child support case (such as the case at issue), the court stated:

"Although all of these cases involved decrees resulting from negotiated settlements and were decided on the principle that the intention of the parties governs, we believe something closely akin to that principle is applicable in the instant case. As the appellant pointed out in his brief, it has long been a rule of construction in determining the meaning of judgments or decrees that one must examine the situation as it existed at the rendition of the judgment."

As a matter of first impression, we believe retroactive application of the "majority" amendment would seriously affect numerous individuals and families in this state who are dependent upon such support orders. The vast majority of divorce decrees of the past decade involve support orders similar to the order in this case rather than the property settlement agreement incorporated into the judgment as seen in the Ruhsam case. No parent who has raised a family in recent times will contest the fact that children become more expensive as they grow older. Those persons in the age group of eighteen to twenty-one frequently need additional support if advanced training or college education is contemplated.

While it is difficult to articulate in any succinct manner, we are dealing with the broad fundamental concepts of separation of powers, due process and the finality of judgments. At the time the support order was entered in this case, the parties and the court understood the age of majority to be twenty-one. It is only reasonable that the court took that into account at the time the property was divided, the custody determined and the amount of support fixed.

The division of property, the child custody provisions, visitation rights, alimony and child support are all interrelated in any rational decision-making process in the divorce action. Any new legislation changing the age of majority will not only affect the support provision, but in many cases it will change the basis for the trial judge's decision on numerous other provisions in the decree.

To apply the "new age of majority" to divorce decrees entered prior to August 13, 1972, would in effect permit an across the board modification of prior judgments. This would erode the solid judicial concept that judgments are valid and binding until modified for good cause after notice and a hearing to the parties involved.

■ We believe the statement made by the Washington Supreme Court in Baker v. Baker, supra, expresses a sound legal concept. The Court, after stating the new age of majority would not be retroactively applied, stated:

"Further, the legislature is without power to set aside, annul, or change the liability upon a judgment affecting solely the rights of private parties by the enactment of a general law."

The ramifications of this decision will have far-reaching social consequences. Take the case of a mother who was awarded custody of a child who is now 18. If she is unable to work she may be totally dependent upon the support award from the prior divorce decree. If support is terminated, education and further training for such youth may also stop. Unless the eighteen year old suddenly becomes self-sufficient both the mother and the 18 year old may be forced to seek some form of public support financed by the taxpayers of this state while the working father escapes all responsibility.

The trial court and all parties to a divorce action heard after the effective date of the new age of majority can take this age change into account and make appropriate contracts, establish trusts for the education of the children or make adequate provisions in the divorce decree.

■■ We have no doubt that the legislature has the power to change the age of majority. However, we do not believe the Arizona Legislature intended to modify prior divorce decrees nor do we believe the Legislature has the authority to modify prior divorce decrees. If the age change is interpreted to modify divorce decrees entered prior to August 13, 1972, we will effectively give a retroactive effect to such legislation and modify the prior decrees without a hearing or notice to the parties involved.

For the reasons stated above, the order terminating the duty of support as set forth in the modified judgment of March 15, 1973, is vacated and the decision of the trial court is reversed. Nothing contained in this decision shall be construed as restricting the inherent authority of the trial court to modify or amend orders pertaining to child support when a material change in circumstances has occurred and such modification is based on the need of the child and the ability of the parent to pay.

DONOFRIO, J., concurs.

FROEB, Judge (dissenting):

I differ from the majority in their view of the nature of rights and duties altered by the Legislature in reducing the age of majority from twenty-one to eighteen.

When the Legislature enacted this change it altered the legal status of all minors who had attained or would attain in the future the age of eighteen from and

after August 13, 1972, the effective date of the act. The legislation was neither retrospective nor prospective in its operation. It affected all minors upon its effective date.

The Arizona Supreme Court has held, " . . . the rule is settled beyond a doubt that majority or minority is a status rather than a fixed or vested right, and that the legislature has full power to fix and change the age of majority." Valley National Bank of Phoenix v. Glover, 62 Ariz. 538, 558, 159 P.2d 292, 301 (1945). There are no vested rights in future child support payments. Jungjohann v. Jungjohann, 213 Kan. 329, 516 P.2d 904 (1973); Shoaf v. Shoaf, 282 N.C. 287, 192 S.E.2d 299 (1972). Similarly, there are no vested property rights in personal privileges that attach during a minority status. Rice v. Rice, 213 Kan. 800, 518 P.2d 477 (1974).

The reasoning of the majority opinion applies a vested rights theory to minority status. But if these rights are vested, at what point do they vest? Under the majority view it would seem that *any* person born prior to August 13, 1972, would be entitled to support until age twenty-one and it would not be limited to those persons for whom there had been a court order for support prior to that date.

I note that the reduction in the age of majority by the Legislature was comprehensive legislation which amended no fewer than 90 sections of Arizona Revised Statutes. Chapter 146, Laws 1972. Yet, I can find only two instances where the Legislature, using express language, preserved the minority status for some members of the class until age twenty-one and these are unrelated to the duty of support. See Chapter 146, Sections 88 and 89, Laws of 1972. With these two exceptions no intent can be found in this legislation that some minor children would become adults at eighteen while others would wait until reaching twenty-one.

The rights and duties at issue in this case are those which arise by virtue of the child support laws in Arizona and not by reason of any agreement of the parties. Thus Ruhsam v. Ruhsam, 110 Ariz. 326, 518 P.2d 576 (1974), modified 110 Ariz. 426, 520 P.2d 298 (1974) has no application here, since in that case there had been contractual arrangements between the parents concerning support for the minor child. The existence of the agreement was pivotal in that decision.

The court has continuing jurisdiction to modify orders of support which it has entered for the benefit of a minor child. Thus there is no vested right to continued support in a certain monetary amount where circumstances are shown to have changed. Likewise the change brought about by the Legislature in reducing the age of majority from twenty-one to eighteen is in the same category, only in the latter instance it is brought about by changes in the law generally through legislative enactment rather than a change wrought by the parties in an individual case. Can it be said that there was neither intent nor authority in the legislation here at issue to accomplish that which the courts undertake each day?

The *Baker, Strum, Vicino* and *Waldron* cases cited by the majority support their conclusion but in my view they diverge from sound legal principle. The holding of the North Carolina Supreme Court in Shoaf v. Shoaf, supra, which considered the precise issue involved here, seems to me more persuasive. The court there held:

"A child support payment falls in the same category as an alimony payment and becomes subject to review by the court upon change of conditions. The Legislature unequivocally changed the conditions by fixing a different date upon which liability to support a child terminated." 192 S.E.2d at 303.

For the reasons stated, I would affirm the order of the trial court terminating the appellee's obligation of support when the minor child reached eighteen.