# Commonwealth ex rel. *v.* Strickland, Appellant.

*Parents and children—Custody of children—Husband and wife—Discretion of court—Act of June 26, 1895, P. L. 316—Habeas corpus—Appeals.*

Both under the common law of Pennsylvania and the Act of June 26, 1895, P. L. 316, the courts may in the exercise of a sound discretion award the custody of a child to either the father or mother, consideration being given to the fitness of the parent and the best interest and permanent welfare of the child.

In making an order awarding the custody of a child to one or other of the parents, a condition may be imposed permitting the child to visit or be visited by the other parent at stated times, and under restrictions suited to the circumstances of the particular case. The act of 1895 does not purport to deal with this subject, and does not narrow the discretionary power of the courts previously exercised in that regard.

The court may also direct that security shall be entered by a mother, where the custody of the children is given to the father, to insure their return to the father at the expiration of the several periods during which they are permitted to visit and be with their mother.

On an appeal from an order awarding the custody of children to a parent, the appellate court is confined to an examination of the record proper, of which the evidence forms no part.

Argued Oct. 10, 1904. Appeal, No. 88, Oct. T., 1904, by defendants, from order of Q. S. Phila. Co., in habeas corpus proceedings in case of Commonwealth ex rel. J. T. Strickland v. Nettie M. Strickland and Sydney T. Muffly. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Petition for habeas corpus.

On November 28, 1903, James T. Strickland presented a petition, representing " that petitioner's daughters, Jennette B. Strickland, aged 13 years ; Dorothy M. Strickland, aged 9 years, are restrained of their liberty by Nettie M. Strickland and S. T. Muffly, in the city of Philadelphia, and within the jurisdiction of this court, and . that they are not detained for any criminal or supposed criminal matter," praying that a writ of habeas corpus be granted by the Honorable M. Sulzberger, then sitting in the court of quarter sessions for the city of Philadelphia, which was granted and directed to the said Nettie M. Strickland and S. T. Muffly, requiring them to produce forthwith the bodies of said Jennette B. and Dorothy M. Strickland.

A hearing was had by the court, and the following order was entered :

That the legal custody of said children, Jennette B. Strickland and Dorothy M. Strickland, be given and awarded to their father, James T. Strickland, but that they be permitted to visit and reside with their mother, Nettie M. Strickland, during school terms, to be returned to their father at vacation periods. He is to surrender them again to their mother in time to enter the proper courses at school.   This order to be made conditionally upon the entry of security in the sum of $5,000 to assure the return of the children by James T. Strickland to the jurisdiction of this court, in accordance with the terms of the order, and to assure the performance of its terms by Nettie M. Strickland, and that she will not remove them or permit their removal beyond the jurisdiction of this court, except for the purpose of delivering them to their father in pursuance of this order.

The decree to remain in force until a further order of the court.

*Error assigned* was the order of the court.

*James R. Grier*, for appellants.—Under the law the mother was entitled to retain these children and have a decree entered accordingly: Com. v. Addicks, 5 Binney, 520 ; Com. v. Smith, 1 Brewster, 547 ; Com. v. Sage, 160 Pa. 399.

The consideration of the best interests and permanent welfare of the children before awarding custody to either parent must be taken into consideration : Com. v. Demot, 7 Phila. 624 ; Com. v. Sage, 160 Pa. 399.

No bail should have been required: Com. v. Sage, 160 Pa. 399.

*John Douglass Brown*, with him *Henry Wolf Bikle*, for appellee, cited : Hopkins v. Com., 50 Pa. 9 ; Demott v. Com., 64 Pa. 302 ; Com. v. Kryder, 1 Penny. 143;. Com. v. Sage, 160 Pa. 399 ; Laciar v. Laciar, 7 Pa. C. C. Rep. 97 ; Com. v. Myers, 6 Pa. Dist. Rep. 31 ; Deringer v. Deringer, 10 Phila. 190 ; Renninger v. Thompson, 6 S. & R. 1.

OPINION BY RICE, P. J., March 14, 1905 :

This is an appeal by the respondent from a final order made in a habeas corpus proceeding, awarding to the relator, subject to certain regulations to which we shall refer hereafter, the custody of two minor children of the relator and the respondent, Nettie M. Strickland.

The courts of Pennsylvania exercised a very broad discretion in such disputes from the earliest days of the commonwealth. In Commonwealth v. Addicks, 5 Binn. 520, Chief Justice TILGHMAN, speaking for the Supreme Court, before whom the writ of habeas corpus was returnable, said : " We have considered the law, and are of opinion, that although we are bound to free the person from all illegal restraints, we are not bound to decide who is entitled to the guardianship, or to deliver infants to the custody of any particular person.    But we may in our discretion do so, if we think that, under the circumstances of the case, it ought to he done."    Speaking of the children he said : " It is to them that our anxiety is principally directed ; and it appears to us, that considering their tender age, they stand in need of that kind of assistance, which can be afforded by none so well as a mother.    It is on their account, therefore, that exercising the discretion with which the law has invested us, we think it best, at present, not to take them from her." Two years later a second writ was sued out by the father, and after hearing, the custody of the infants was awarded to him. But this decision was not put upon the ground that the court

was under legal compulsion to award the custody to him, irrespective of their welfare, but upon the ground that under the changed circumstances their welfare would be best subserved thereby. The doctrine that the power which the court exercised was discretionary was reiterated in the following language: " The great object of the habeas corpus is to free the person from illegal restraint; that being done, the court may proceed further or not, as the circumstances may require : " Commonwealth v. Addicks, 2 S. & R. 174. In Commonwealth ex rel. v. Gilkeson, 1 Phila. 194, Justice LOWRIE said : " We never in this state held that courts are bound to a strict adherence to the old common-law rules as to the custody of children, and this writ (habeas corpus) being issued as a remedy for the improper interference with that right we must treat it as a Pennsylvania remedy, governed by the common law of Pennsylvania, of which equitable principles constitute an illustrious part." It has been said that the common law of Pennsylvania upon the subject " first found authoritative expression in Commonwealth v. Addicks, 5 Binn. 520," (Commonwealth ex rel. Hart v. Hart, 14 Phila. 352) and that " it is in fact the leading American case upon the subject, giving tone to all the decisions of other states : " Commonwealth ex rel. v. Gilkeson, 1 Phila. 194. In Commonwealth ex rel. v. Demott, 64 Pa. 305, AGNEW, J., then of the Supreme Court, said : " I consider it the well-settled doctrine of the writ of habeas corpus, that though it is a writ of right to remove the unlawful restraint of liberty, and restore from unwarranted imprisonment, it is not of right to be used to transfer the custody of the person from one claimant to another ; but in such a case the judge administering the functions of the writ is guided by a sound discretion upon the evidence." This view of the nature of the powers of the court and the principles governing their exercise was generally adopted by the judges of common pleas, even prior to the Act of June 26, 1895, P. L. 316, as will be seen by the cases collated in 15 P. & L. Dig. of Dec. 25,130. It cannot be said, however, that there was entire unanimity of opinion upon the subject, some judges holding more strictly than others to the old English rule as to the superior right of the father unless he was shown to be unfit. This, perhaps, led to the adoption of the act. At any rate, the act gives to

the mother, under certain circumstances, " the same and equal rights to its (the child's) custody and services as is now possessed by law by the husband, who is the father of such minor child," and the second section provides that : " In all cases of dispute between the father and the mother of such minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such child shall be committed, and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child." There is nothing in this record from which it can be inferred that the learned judge below was not guided by these principles in the hearing and disposition of the case ; on the contrary, it is to be legally presumed that he was guided by them. This conclusion does not rest upon presumption alone, which would be sufficient, but is affirmatively shown by the order and the carefully considered opinion accompanying it. The case cannot be likened to Commonwealth v. Sage, 160 Pa. 399, for in that case the order affirmatively showed that the judge abrogated his functions and awarded the custody to the relator, without passing upon the question of his fitness, which was distinctly raised by the pleadings. Nothing of that kind appears, or can be inferred, in this case. But we are asked to review the case upon the evidence submitted to the judge below, as if this were an appeal proper, and to determine whether his decision is just and conscionable on the case that was presented to him. " The subject was one of the most difficult and delicate upon which a court is called to act," as Justice FELL truly remarked in Commonwealth ex rel. v. Blatt, 165 Pa. 213. No judge deciding such a dispute can predict with absolute certainty that his order will turn out in the distant future to be the best that might have been made. More than in any other kind of a case he is aided in arriving at a correct judgment by carefully observing the conduct, appearance and manner of the parents and children, as well as other witnesses, during the hearing. As the counsel for the appellee well say, if we were to retry the case upon the printed notes of testimony, we would be without the valuable aid which the learned judge below had. But apart from this consideration, there is the technical objection that no mode is provided

by law, either by bill of exceptions or otherwise, for bringing upon the record of the court below the evidence given on such a hearing. The proceeding in this court, although called an appeal, is in legal effect but a proceeding upon certiorari, and therefore our jurisdiction is confined to an examination of the record proper of which, as we have suggested, the evidence forms no part. Hence, the merits of such cases cannot be inquired into by us, but must be left to the judgment of the court or judge who heard and disposed of the case below, in whom the discretionary power is wisely vested by law. This was expressly decided in Commonwealth ex rel. v. Kryder, 1 Pennypacker, 143; and, although the legislature had the subject directly before them in 1895, they did not see fit to change the law, so far as the right of review was concerned.

We come then to the questions raised as to the form of the order. A good deal was said in the oral argument about divided custody, which it was claimed, if we correctly understood counsel, this order provides for in contravention of the clear intent of the statute. We cannot agree that the order awarding the legal custody of the children to the relator is invalid for the reason stated. Prior to the act of 1895 the courts of Pennsylvania never held that in disputes between the father and the mother they must award the custody of the infant to one of them absolutely, and could not impose conditions permitting the child to visit or be visited by the other parent at stated times and under restrictions suited to the circumstances of the particular case. Such orders were very common, and we know of no ground upon which the power to make them in a proper case could be questioned. The act of 1895 does not purport to deal with that subject, and there is discoverable in its language no clear legislative intent to narrow the discretionary power of the court or judge in that regard.

It being determined that the court had power to make the order, it follows that it had power to include in it suitable provisions to secure its enforcement, and amongst them a provision that will assure the return of the children to the relator, to whom the general legal custody was awarded, at the expiration of the several periods during which they are permitted to visit and be with their mother. This part of the order (as to security) is not unreasonable on its face, and the learned

judge's recital of the deplorable occurrences which preceded the issuing of the writ shows that he had good reasons for making it. The ability of the respondent to give the security is shown by the fact appearing of record, that her sureties were approved by the court. Moreover, the amount of the security was a matter resting in the sound discretion of that court, and the judges undoubtedly would have reduced it if it had been shown to them to be excessive.

All the assignments of error are overruled, and the order is affirmed; the costs of the appeal to be paid by the appellants.