**GODBEY v GODBEY**

Ohio Appeals, 1st Dist.,
Hamilton Co.

No. 6138. Decided July 13, 1942.

Maurice A. Thon, Cincinnati, for appellee.

John W. Cowell, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

This is an appeal from an order of the court of common pleas of Hamilton county, Division of Domestic Relations, overruling a motion of the mother for a modification of a prior order awarding the custody of three minor children to their father.

The record shows that the parents were divorced on July 2nd, 1935, because of the gross neglect of the mother and the care, custody, control, and education of the three children, then ten, seven, and five years of age, were awarded

to their father, reserving the right to the mother to visit them at any reasonable time.

It also appears from the record that the mother went to Florida about one year after the divorce was granted where she worked as a waitress until March, 1939, when she married one Henry Petrasek, who at the time of the hearing was employed as manager of a company dealing in ice at Miami, Florida. It also appears that about two years ago they (Mr. and Mrs. Petrasek) bought a residence there for $3500.00 and that the dimensions of the lot were fifty by one hundred feet, located about three blocks from a school, that the residence had seven rooms, of which four were bed rooms. The record also shows that this couple had one child—a son—living with them and that Henry Petrasek has four children of a former marriage, who were living with their mother in Pennsylvania.

The appellant testified that her present husband was willing for her to bring these three children into his home, that she wanted them and was able to take care of them, and that they told her that they wanted to go with her.

The record also shows that during the years since her divorce the appellant has had very little contact with the children, having availed herself of the right to visit them only a very few times, which is accounted for in part but only in part by the fact of her residence in Florida. She has carried on some correspondence by mail with them, but how extensive that has been is not clear from the record.

When interviewed in the absence of both parents, the children expressed a desire to go to their mother.

Since the divorce and at the present time the father has maintained a home for these children in Hamilton county, has kept them in school where their record is good, has disciplined them for misbehavior and misconduct as a normal father concerned for the proper behavior would and the children have reacted to this discipline in the normal way by being slightly resentful for a short time thereafter. There is nothing in the record to indicate that the relation of this father to these children differs in any respect from that existing in any other family where there is a struggle to maintain a decent standard of living.

The father is earning twenty dollars per week in cash and his living quarters. These living quarters are over a garage connected with his employer's place of business, and consist of three rooms with shower bath and lavatory. Two of the rooms are small and the other large but all are "adequately furnished" and "immaculately neat and clean."

The father has remarried, has a young son by this marriage and all live in these quarters.

The father's relation to his employer's family is such that the children perform small tasks for the family and receive small sums in payment therefor, and, perhaps, gifts of second-hand clothing. There is no evidence that there is anything degrading in this incident. On the contrary, it simply shows co-operation on the part of all to preserve the home and the family relation, and the contribution on the part of the children could have nothing but a wholesome influence upon them.

There is no evidence that the father has any bad habits. Whatever unfavorable circumstances ex-

ist would result from the small family income.

That is the situation in which the children have been maintained by the father in Hamilton county within the jurisdiction of the court.

The mother by this proceeding seeks to have the court modify the order under which the father has done this and give to her the custody of the children, so that she can take them to Miami, Florida, beyond the jurisdiction of the court.

In the order now under review the trial court after reciting that the children "chose to be with their mother, the defendant in this case. That their mother lives in Miami, Florida, and if given custody of said children will take them to Miami, Florida" made the following finding and order: "The court further finds that it would not be for the best interest of the children to change their custody and hereby overrule said motion."

Counsel for appellant asserts that this ruling is in direct conflict with §8033 GC, in that it deprives the children of their right to choose the parent with whom to live. By that section it is provided:

"Upon hearing the testimony of either or both of such parents, corroborated by other proof, the court shall decide which one of them shall have the care, custody and control of such offspring, taking into account that which would be for their best interest, except that, if such children be ten years of age or more, they must be allowed to choose which parent they prefer to live with, unless the parent so selected, by reason of moral depravity, habitul drunkenness or incapacity, be unfitted to take charge of such children, in which event the court shall determine their custodian. The above provision permitting

children to choose the parent with whom they desire to live, also shall apply to proceedings for modification of the former orders of the court, fixing the custody thereof, as in original actions. If upon such hearing it should be proved that both parents are improper persons to have the care, custody and control of their children, in its discretion, the court may either designate some reputable and discreet person to take charge thereof, or commit them to a county or district children's home in which they or their parents have a legal settlement."

By Sec. 8032 GC, the parents are placed upon an exact equality as to the custody of the ██ children. Neither is given by law a superior claim to custody, and the welfare of the child is the sole test by which the issue is determined. 14 O. Jur. 550, et seq.

It is clear, therefore, that unless the mandate of this statute is so compelling as to supersede this long-established rule, the trial court in the exercise of a sound discretion could award the child's custody to either the mother or father, or to neither, dependent entirely upon his determination of what would be for the welfare of the child, under all the circumstances—and the child's preference would be just one such circumstance, but not necessarily the controlling one. In the exercise of that discretion the circumstance that awarding the custody to one or the other would result in the removal of the child from the territorial jurisdiction of the court would be relevant and material. On the power of the court to prevent the removal of the child from the jurisdiction of the court, it is stated in 27 Corpus Juris Secundum, page 1179, that:

514

"The court may direct that the parent to whom the custody is awarded shall not, without its permission, remove the children from the jurisdiction of the court, and it may decree that the right to custody shall continue only while the parent remains within the state. It is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby, and ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state."

See also: 17 Am. Juris., 513, and annotation to Parrish v Parrish, (_____ Va. _____, 82 S. E. 119) L. R. A., 1915 A 576.

A trial court having that discretion, it is also clear that a reviewing court would not be justified in disturbing its conclusion, awarding the custody to the resident parent in the absence of proof of unfitness so clear as to show an abuse of discretion.

And that no abuse of discretion appears in this record is equally clear.

Now has the General Assembly by §8033, GC, given to the child's choice such a sanction as to require the court to follow it, notwithstanding the other circumstances appearing in the record of this case?

It is expressly provided in that section that the court need not follow the child's wish if the chosen parent is morally depraved, an habitual drunkard, or is unfitted because of "incapacity", and the court is clothed with authority to disregard both parents upon proof that they are "improper persons to have the care, custody and control of their children."

"Incapacity" is defined by Bouvier as "The want of a quality legally to do, give, transmit or receive something."

Webster defines it as "Lack of physical or intellectual power, or of natural or legal qualification." He gives inability, incapability, disqualification as its synonyms, and that is manifestly the sense in which it is used in this section, because when both parents are "improper" persons, the court is authorized to award the custody to some other person. Webster defines "improper" as "Not suited to the circumstances", and Bouvier, "Not suitable; unfit; not suitable to the character, time and place."

In the order appealed from the court made no express finding that the appellant lacked capacity, but it did recite the fact that she intended to immediately take these children to Miami, Florida, and found that "it would not be for the best interest of the children to change their custody." In the light of the record, that was the equivalent of a finding that the mother lacked capacity to properly care for the children within the territorial jurisdiction of the court.

Before this court would be justified in reversing this order, it must find in the record prejudicial error. Error must affirmatively appear. There is no finding in this record that the mother under the circumstances is a proper person to have the custody of the children, or that she is capable of properly caring for them. That distinguishes this case from **Schwalenberg v Schwalenberg, 65 Oh Ap 217**, in which it was conceded: "That the homes of either of the parties—is a proper environment in which to raise the minor whose possession is in dispute."

It seems to us that proof that the appellant intended to take the children to a distant state, where they would be entirely dependent for support upon a step-father, under no legal obligation whatsoever, and of whose disposition and character the court knew nothing, and of whose financial capacity the court knew but little, did not tend to show appellant's capacity. It certainly did not require the court to reach the conclusion that she had capacity.

Until the court found that both parents were capable of furnishing the proper care, custody, and control, the occasion of choice between them by the children did not arise. The court made no such finding. It did find that the father had that capacity, and therefore, left the children with him. It did not find the mother was also capable. Inferentially, it found the contrary. We cannot say on this record that the court should have found otherwise.

As we construe §8033 GC, it does not limit the court's power to a mere recording of the child's choice. The judicial function was not withdrawn.

Finding no prejudicial error in the record, the judgment is affirmed.

ROSS, J., concurs.