No. 38,566

JOHN B. HEDDING, *Appellee,* v. GEORGIA MAE (HEDDING) INMAN, *Appellant.*

(241 P. 2d 479)

Opinion filed March 8, 1952.

*Robert M. Corbett,* of Sabetha, argued the cause and *J. R. Hyland* and *H. N. Hyland,* both of Washington, were with him on the briefs for the appellant.

*A. C. Bokelman,* of Washington, argued the cause for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for divorce. The appeal is from an order of the trial court entered some years after the divorce was granted, denying defendant's motion for an order changing the custody of Susan, an eight-year-old daughter of the couple. The plaintiff John and Georgia Mae, defendant, were married in South Carolina on April 19, 1941. She was seventeen years old at the time. In January, 1942, they moved to Washington, Kan., and began to live on a farm with John's mother and sister. For some reason things did not go too well for the young couple and she decided to return to South Carolina. John bought her a bus ticket, gave her $10 and put her on the bus. She had been raised in an orphanage so did not have any home to which she could go, but started to live with a friend. Soon after her arrival, she went to

work at a cracker factory for $30 a week. She worked there until two days before Susan was born, October 6, 1942. She was in the hospital four days and four days after she was released from the hospital she went to work in the cracker mill from 11 p. m. until 7 a. m., earning $16 a week. To supplement this income she got a job in a dime store from 9 a. m. until 6 p. m. for $8 a week. She hired a lady to look after Susan and did her own housework. A short time after Susan's birth John sued Georgia Mae for divorce in the district court of Washington county. A decree was entered on the 6th day of January, 1943. Service was had on Georgia Mae by publication. She did not appear.

The court ordered John to pay her $50 to defray her hospital bill for the baby and $7.50 a month, a month thereafter for the support of Susan. Five dollars of this was to be sent to Georgia Mae in South Carolina and $2.50 was to be retained by the clerk of the court and used for the support of Susan until some future order.

At the oral argument of this appeal we were advised and there does not seem to be any dispute but that John paid the $50 and made a few of the $7.50 monthly payments, but not all of them. She had Susan with her in South Carolina until she was eleven months old.

Georgia Mae's health became so bad that she was not able to properly take care of Susan, so she requested John to come to South Carolina and get her. In September, 1943, at a time when the baby was not quite a year old John went to South Carolina, was given Susan by Georgia Mae and he brought her back to Washington, where he kept her in his home with his mother and sister until the hearing of this motion.

On May 3, 1944, the plaintiff after notice to Georgia Mae secured an order of the trial court awarding him the custody of Susan and setting aside the order for payments. Nothing further was done in the case until Georgia Mae in the spring of 1951 filed this application asking the court to change the custody of Susan from John to her. In this application she referred to the decree of May 3, 1944 and alleged about the marriage, the removal to Kansas; that she returned to South Carolina on October 6, 1942; that she supported her by her sole efforts until September 11, 1943, when she was no longer able to do so and voluntarily requested plaintiff to assume the guardianship and support of Susan temporarily; that John obtained a divorce from her, which decree made no provision for

the custody of Susan; that thereafter on May 3, 1944, John obtained a decree awarding the custody of Susan and that she had notice of the hearing but was unable to appear.

She alleged that during all the time since 1943 she had attempted to keep in touch with Susan; had sent presents and money to her and had written John about her welfare; that on two occasions she had made a trip to Washington for the purpose of visiting Susan; that during such time Susan had been living with John, his mother and sister; that recently John's sister had married and left the home; that John was working and away from home all day and left the baby with his mother, who was about seventy years old; that she was now married and was in a position to give Susan a good home; that she and her husband were anxious to have the care of Susan in their home; were living on a farm, which would be a pleasant place for a child to live; that they had no other children and could devote their time to Susan; that she was no longer working and could devote her whole time to her home and to her child and that if Susan was given her that she and her husband would set up a trust fund for her education if the court so ordered; that she was the proper person to have the custody of the child.

She alleged she surrendered the responsibility of the child solely because she was not able to earn a living for herself and child. She prayed that the order made on May 3, 1944, where the custody of Susan was given John, be changed and she be granted her custody and that John be ordered to pay a reasonable sum each month into the district court for the support of Susan; and that she be permitted to take her to her home, which was outside the jurisdiction of the court.

To this motion John answered that he had the sole care of the child since 1943 and had been given the custody on May 3, 1944, and that she would be nine years old on October 6, 1951; that since she was eleven months old he had supported her; that she had been in regular attendance at common school and church school and would attend the fourth grade next year; that he was a fit person to have her custody and continue being her guardian; that he believed it would be to her best interest that she remain in his custody. He alleged that if Georgia Mae should be given the custody of Susan it would take her out of the jurisdiction of the court.

The court made findings of fact and conclusions of law as follows:

"1. The parties hereto were married on the 19th day of April, 1941, at Columbia, South Carolina.

"2. The plaintiff was divorced from the defendant by the decree of this court on the 6th day of January, 1943.

"3. At the date of said divorce, the defendant had given birth to a child whose name is that of Susan Earle Hedding and she continued in her custody until about the month of September, 1943.

"4. That in September, 1943, and at the request of the defendant, the plaintiff made a trip to South Carolina to obtain said child and to take the care and custody of it because of the inability of the defendant to properly care for and maintain said child.

"5. That on the 3d day of May, 1944, pursuant to regular proceedings had in this action and upon due notice to the defendant, the District Court of Washington County, Kansas, awarded the legal custody of said child to the plaintiff, but without dealing with the subject of the visitation rights of said defendant, or any other rights, with respect to said child.

"6. Said child has ever since the time it was removed from South Carolina to the State of Kansas as above mentioned, continued in the care, custody and under the control of the plaintiff, said defendant having visited said child once in the interim for a period of three or four days at the home of the plaintiff in Washington County, Kansas.

"7. Under the evidence produced in this case there is no question present as to the fitness of the plaintiff to continue the custody of said child, nor as to his having given said child proper care and attention as well as educational advantages due to said child. His home is amply sufficient and his employment and earnings are fit and sufficient to provide, and he does provide, said child with all the necessaries of life and to the extent of most of the luxuries to which she is entitled.

"8. Said defendant is now married to a man 56 years of age, a cattleman by trade or profession and the owner and lessee of a large amount of land in the State of South Carolina, and he has thereon sufficient improvements and does maintain a large home which would be suitable for the proper care and maintenance of said child. No question has been injected in this case as to the defendant bearing a proper reputation for morality, and no question as to her fitness to have the custody of said child other than the circumstances and facts above related herein relative to the custody and care of said child.

"9. As a matter of· fact, due to the conditions heretofore existing, said child does not in truth know its mother, the defendant herein, and has had no opportunity to associate with her due to the circumstances above provided which were mainly brought about by the acts of the defendant.

"10. Said child has never in fact known any other place of residence than Washington County, Kansas, her associates reside there and her whole life has been, to the date hereof builded upon such association and acquaintance.

"11. Some evidence was offered in this case as to the fitness of the defendant to have the custody of the child, which the court desires now to say was not properly admitted, nor did it tend to prove such fact in any manner. The length. of acquaintance of such witnesses and the fact that their opinion was based upon representations of the defendant made the same entirely improper. However, as stated above, no question is here present as to the fitness of said defendant to have the custody of said child."

"CONCLUSIONS OF LAW.

"The best interests of said minor child, Susan Earle Hedding, will be promoted and served by leaving her in the custody and under the control of the plaintiff.

"To remove her from the State of Kansas to the State of South Carolina would be ill-advised and not tend to promote or serve the best interests of said child.

"Therefore, the application for a change of custody is denied and the costs of the hearing are assessed to the defendant."

Judgment of the court was entered according to these findings.

Georgia Mae filed a motion for a new trial on the ground of abuse of discretion, erroneous rulings of the court and that the decision was in whole or in part contrary to the evidence. This motion was overruled. Georgia Mae has appealed from the findings of fact and conclusions of law and from the judgment denying that the child be given the right of visitation to her in South Carolina during the summer months of June, July and August and from the order overruling her motion for a new trial and from all adverse rulings and conclusions of the court.

The assignments of error followed the notice of appeal.

The court on June 12 denied a motion of Georgia Mae for an alternative order to permit Susan to visit her in the summer and ordered that she have the right at all proper times to visit her in her father's home in Washington insofar as it did not unreasonably interfere with the care and control by John.

Georgia Mae argues here the order of the trial court denying her motion for a change of custody and the order denying the right of visitation during the summer was an abuse of discretion.

The motion was filed pursuant to G. S. 1949, 60-1510. That section provides as follows:

"When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper."

Actually there is not much dispute about the facts. We have no way of knowing except from what she testified to what caused Georgia Mae to leave Washington and return to South Carolina, knowing, as she must have, that she was pregnant. It makes but little difference in our decision now. It is not disputed and there can be but little doubt that she was in dire distress when she wrote John and asked him to come get the baby. We are not disposed under the circumstances to give that voluntary surrender much

weight in considering our present question. The provision made by the trial court in the original divorce decree for the payment by John of support money for the baby was not generous. John's failure to make all these meager payments is not too commendable. That failure, however, is given but little weight here. We are concerned altogether with Susan's welfare. There is no doubt but that the situation has changed with reference to the ability of Georgia Mae to care for her daughter. She has become a trained nurse and is able to earn enough to support them both. Besides that she is married to a respectable man who is willing to permit her to bring the little girl into their home. He is able to support both of them and they have a nice country home. The trial judge summed up the situation as to the facts as he saw them in findings 9 and 10. There he found:

"9. As a matter of fact, due to the conditions heretofore existing, said child does not in truth know its mother, the defendant herein, and has had no opportunity to associate with her due to the circumstances above provided, which were mainly brought about by the acts of the defendant.

"10. Said child has never in fact known any other place of residence than Washington County, Kansas, her associates reside there and her whole life has been to the date hereof builded upon such association and acquaintance."

It is clear the trial court properly deemed the best interests of Susan to be the paramount issue. Such is clearly the law. (See *Prier v. Lancaster*, 169 Kan. 368, 219 P. 2d 358.) The trouble about that rule is it is easy to state but difficult to apply. Every case has some new feature. One cannot read the reports of this court without being convinced that justices from the time of the revered Justice Brewer down to now have felt their inadequacy. Such cases have been submitted to us many times. We can only do our best to look beyond the personalities of the older persons concerned to the welfare of the child.

Here we approach the decision with a determination to make such a decision. At the present time Susan is in Washington county in her father's custody. Her grandmother, however, who is in her early seventies, is charged with the actual care of her. John's sister, who did make her home with them, is married and gone now, so John's mother is left alone to keep house for him and care for the little girl. They live in a four-room house and there was evidence that Susan either has to sleep with her grandmother or sleep on a pallet on the floor. On one occasion at least she was sleeping on the floor. In fairness, however, it must be said that she is well be-

haved, neatly dressed and according to the affidavit of one school-teacher, which was admitted in evidence, she is courteous in her conduct and demeanor, above the average in intelligence, and was neat and clean at all times. It really cannot be said that her father and grandmother have not done a good job raising her so far.

The whole thing boils itself down to this—what will best serve this child for the future? Both parties are her own parents. Neither one has an absolute right to the custody of this child exclusive of the other. In a case of this sort we naturally must give some consideration to the relative financial condition of the two contending parents, not exclusively, because the possession of wealth is no guaranty that one will make a good parent, nor does the lack of wealth mean one will not. It should only be considered for what bearing it has along with other surrounding facts and circumstances on the ability of either parent to give this little girl a good home, a proper education and best fit her to live a rich and full life and the likelihood that they will do so.

One thing Georgia Mae can give her, which no one else can—that is a mother's love. Indeed on the witness stand that seemed to be uppermost in her mind. Who can say, perhaps where each parent can clothe, feed and provide adequate shelter for her equally, the mother love item should tip the scales? We have come to that conclusion. Georgia Mae should have custody of Susan from September 1st to June 1st of each year. John should have custody of her from June 1st to September 1st each year. Georgia Mae must come to Washington and get her each September and take her to South Carolina. John must go to South Carolina and get her every June 1st and return with her to Washington. John must deliver her to Georgia Mae each September 1st. Georgia Mae must deliver her to John each June 1st. John is relieved of any duty to support her while she is with Georgia Mae. Susan will be out of the jurisdiction of this court when she is taken to South Carolina, so Georgia Mae is ordered to deposit with the clerk of the district court of Washington county, Kansas, a good and sufficient bond in the amount of $1,000, subject to the approval of the clerk of that court, conditioned that she will deliver Susan to John on the first of every June and abide the further order of this court or the district court of Washington county, Kansas. This order shall not become effective until Susan has finished this school year. On that account John is ordered to deliver Susan into the hands of Georgia Mae on her

appearing for her at Washington, Kan., on July 1, 1952, and on the giving of bond above described and on the 1st of September each year thereafter. In case Georgia Mae fails to or refuses to post the bond above described, the judgment is affirmed; otherwise it is modified in accordance with this opinion.

THIELE, J., dissents.