21 N.J. Super. 522 (1952)
91 A.2d 418
CORTLANDT R. TURNEY, PLAINTIFF-APPELLANT,
v.
DINANDA H. TURNEY NOONEY, DEFENDANT-CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1952.
Decided October 3, 1952.
*524 Before Judges McGEEHAN, BIGELOW and SMALLEY.
Mr. Cortlandt R. Turney, appellant-respondent, argued the cause pro se.
Mr. Nicholas Conover English argued the cause for cross-appellant (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by BIGELOW, J.A.D.
This matter is before us on cross appeals from two orders of the Chancery Division, dated April 4, 1952, in two actions consolidated, concerning the custody and maintenance of the son of the parties. The controversy has been before the Superior Court almost continuously for several years. See 5 N.J. Super. 392 (App. Div. 1949) and 9 N.J. Super. 333 (Ch. Div. 1950).
The plaintiff and defendant were married in January 1942, and their son was born in June 1943. The next year they separated, defendant taking the baby with her. In 1946, plaintiff obtained a divorce from his wife on the ground of desertion. The defendant married Nooney a few months or perhaps a year later, and plaintiff married his present wife in January 1949. September of that year, without warning to plaintiff, Mrs. Nooney went to India to join her husband, taking the boy with her, and did not bring him back to New Jersey until January 29, 1951.
An order dated February 2, 1951, gave custody of his son to the plaintiff until August 1, 1951; then custody to the defendant for an indefinite period, except that plaintiff *525 should have the child on alternate week-ends, and for the Christmas and Easter holidays and four weeks in the summer. As security against defendant again taking the child away, a restraint theretofore imposed against her alienating certain lands was continued in effect.
A year later, Mrs. Nooney moved that the restraint be vacated; that the time during which the child should be with his father be changed somewhat, and that plaintiff be required to pay defendant $25 weekly for the support of the child, retroactive to August 1, 1951.
On April 4, 1952, the court made the orders which are the subject of the appeals. Defendant was permitted to give bond for $2,500 in lieu of the restraints on alienation. The provisions for custody remained unchanged and the plaintiff was ordered to pay defendant $15 a week beginning February 15, 1952.
The plaintiff now argues that the Chancery Division should have given him general custody of the boy. But plaintiff made no application for custody in the Chancery Division in the proceeding leading to the orders now before us, but merely resisted defendant's motion, and therefore we do not consider his argument on this point. His remedy is a petition in the Chancery Division where the pertinent facts can be fully developed.
The plaintiff argues that the bond of $2,500 is too small. In our opinion, it is enough. Only one other matter presented by the plaintiff's appeal requires discussion. He objects to being required to pay defendant for the support of their son. Each parent, he urges, should bear the support of the child while he is in that parent's custody.
Parents are equally charged with their children's care, nurture, education and welfare. R.S. 9:2-4. And see Kopack v. Polzer, 5 N.J. Super. 114; affirmed 4 N.J. 327 (1950). When the family is living together as a unit, the father is under a duty to support the family, including his wife and small children. And the father and husband cannot, by his own wrongdoing, drive wife or child away from *526 his home and thereby relieve himself of his duty to support them. But when the wife is the wrongdoer, when she deserts her husband, he is under no legal duty to support her. Yule v. Yule, 10 N.J. Eq. 138 (Ch. 1854); Foss v. Hartwell, 168 Mass. 66, 46 N.E. 411, 37 L.R.A. 589 (Mass. Sup. Jud. Ct. 1897). And in such case where the father desires to keep the child in his own home and to maintain it there, yet the court, because of the child's youth, or for other sufficient reason, grants the mother's petition for custody, is the father obligated to pay the mother for the support of the child? Speaking in general terms, we know of no such obligation; it did not exist at common law; it cannot be spelled out of the statutes. See 67 C.J.S., Parent and Child, § 15, p. 693, and 27 C.J.S., Divorce, § 319, p. 1204-1206. Of course, in individual cases, the circumstances may lead to an order that the father pay. Danzi v. Danzi, 142 N.J. Eq. 662 (E. & A. 1948), is a case of that character.
The statute directs the court to make such order "touching the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just." R.S. 2:50-37. The primary consideration is the welfare of the child. Seitz v. Seitz, 1 N.J. Super. 234 (App. Div. 1949). If the mother needs the father's financial assistance in order properly to maintain the child, undoubtedly the father would be required to help. But let us suppose that a mother is given custody of a child largely because her new husband is financially able to provide a better home for the child than can the child's father, it is unlikely that the father would be required to contribute. The facts in each case determine what is "fit, reasonable and just." In the present case, the data before us is insufficient to warrant our disturbing the order for support.
On the wife's appeal, she urges that the order ought to have been retroactive so that the plaintiff should reimburse her for support for the six months prior to the day of her motion. We agree with the master's decision that payments *527 for support should start as of the time the wife made her motion and not earlier.
Defendant asks that the fee of her counsel be charged, in part at least, against plaintiff, on the ground that this suit is in the nature of a "matrimonial action." While the parties were husband and wife at one time, the relation was severed in 1946 and defendant for some years has been the wife of another man.
The practice of charging a husband with the reasonable legal expenses of his wife, when the parties are engaged in litigation, arose because at common law all the wife's personal estate and the income from her lands passed to her husband, and if he were not liable, the wife, in many cases, must go without justice. Her legal expenses were considered "necessaries" and her solicitor could sue her husband at law, just as could a merchant who supplied the wife with food. Wilson v. Ford, 3 Ex. Cas. (1868) 63; Michael Abrahams, Sons & Co. v. Buckley, L.R. [1924] 1 K.B. 903. Cf. Westcott v. Hinckley, 56 N.J.L. 343 (Sup. Ct. 1894). The practise of allowing the wife a counsel fee has continued in New Jersey because in most families the wife still is, in fact, financially dependent on her husband. Amos v. Amos, 4 N.J. Eq. 171 (Ch. 1842); Hopson v. Hopson, 95 N.J. Eq. 540 (Ch. 1924). Clearly, the policy which fixes liability on the husband does not apply to an action between Turney and the wife of Nooney.
The orders under review are affirmed on both appeals. No costs will be allowed either party as against the other.