265 P.2d 778

**WOOD v. WOOD.**

No. 5672.

Supreme Court of Arizona.

Jan. 18, 1954.

Lewis, Roca & Scoville, Phoenix, for appellant.

Axline & Shelley, Holbrook, for appellee.

UDALL, Justice.

Plaintiff Jeanne H. Wood has appealed from certain provisions contained in the judgment entered in the divorce action against her husband, Thomas Edward Wood, defendant-appellee.

The evidence adduced at the trial shows the parties became acquainted while attending the Arizona State College at Tempe, and were married May 28, 1950. That fall defendant was employed at an annual salary of $2,400 to teach a nine-month school at Pinedale, Navajo County, Arizona. The young couple, both in their early twenties, set up housekeeping in rented quarters in a private home in Pinedale. A son, Thomas Edward Wood IV, was born April 27, 1951. During the summer vacation period of that year, defendant supplemented his income by working for the U. S. Forest Service, for which he received the sum of $782. The couple's voyage on the matrimonial sea was a turbulent one, due in part no doubt to the fact that plaintiff was a city girl who came from a fine home, provided by loving, indulgent, and well-to-do parents, in Los Angeles, California, and found difficulty in adjusting herself to a new life in a strange community amid the somewhat primitive conditions found in their new home. They came to a parting of the ways on November 4, 1951; an attorney was employed by plaintiff and her father, and three days later the instant action for divorce was filed. Defendant answered and counterclaimed for divorce and custody of the minor. The case was tried to the court sitting without a jury, on February 19 and 20, 1952. On the following morning the court entered a minute order for judgment, and formal written judgment in strict conformity therewith was entered on March 5th. This judgment provided (1) that plaintiff be granted a divorce from defendant and that the bonds of matrimony theretofore existing be dissolved; (2) that the plaintiff be awarded custody of the minor child, with the right to take said child to the state of California to reside there with her, on condition that plaintiff by a day certain furnish bond in the sum of $3,000 to ensure that she would not initiate any litigation in any court outside the state of Arizona to change the custody or otherwise seek to modify the judgment of the court; and to ensure that she would comply with the court's order and bear the expense of bringing the child to and returning him from Arizona for an annual visit with the father at his parents' home in Chandler, Arizona; (3) that defendant be required to pay the sum of $50 per month for support of the child; (4) that each party bear his own costs, expenses, and attorney's fees. It appears there was no community property to divide.

On March 19, 1952, plaintiff filed a notice of appeal from the following portions of the judgment:

1. From that portion requiring each party to pay his own costs and attorney's fees.

2. From that portion requiring her to post bond guaranteeing that she would comply with the court order and that she would not seek its modification outside Arizona.

3. From that portion requiring her to bear the expense of bringing the child to and returning him from Arizona.

Plaintiff strenuously objects to the attempt to place in the record on appeal, by a supplemental abstract, certain minute entries made by the trial court on March 28 and April 1, 1952. She asserts the court attempted to bolster the record as it then stood, and to support the orders theretofore entered, by incorporating into the record by means of nunc pro tunc orders, matters which did not occur in open court, as well as other matters of which the court erroneously took judicial notice. We deem it unnecessary to consider the lawfulness of these orders for they are superfluous, and the matter can be determined wholly upon the reporter's transcript of the evidence taken at the trial.

There are but three assignments of error attacking the provisos in the judgment of which complaint is made. In each instance it is urged the trial court erred and unreasonably abused its discretion in requiring plaintiff to do the three things heretofore enumerated.

We shall first consider the assignment that the court erred in requiring plaintiff to pay her own attorney's fees and costs. This is claimed to be an abuse of discretion "for the reason that the evidence showed the husband to be an able-bodied wage earner and showed her to be without property or income." The evidence on this point, considered in the light most favorable to sustaining the requirement, shows that defendant was able-bodied, had an earning capacity for the previous year of $3,182, but at the time of trial had not accumulated "any worldly goods". On the other hand it appears that plaintiff (while she may not have earned it) at all times during their married life had a separate bank account, and "Whenever she wanted anything * * * she would write out a check and buy it. * * *." While the amount in the bank account was unknown to defendant, it does appear that plaintiff never lacked for money and was able to make frequent trips to her parents' home in California without financial help from her husband. Her mother testified they gave plaintiff an allowance of $100 per month. Plaintiff testified "I have a little money provided me by my father." When it came to employing counsel there was no request for attorney's fees pendente lite because of any inability on her part to finance the lawsuit. The attorney was paid in advance $125 of the $250 fee which he testified at trial was the value of his services.

We agree that plaintiff's father was under no legal obligation whatsoever to give his daughter money or finance her part of this lawsuit, but certainly once the gift was perfected and the money became plaintiff's property the court was entitled to consider that fact, and the *source* of the funds became a matter of no consequence. The *court's consideration of an executed gift is not to be confused with an expectation of and reliance upon some future largesse of the parents.*

■ Granting or withholding an allowance for attorney's fees and costs in divorce proceedings is admittedly discretionary. Sections 27–809 and 27–810, A.C.A. 1939. Each case depends on its own peculiar facts, and in the instant case we perceive no abuse of discretion on the part of the trial court in requiring each party to bear his own costs and attorney's fees.

■ We next consider the requirement that plaintiff post bond to guarantee that she will comply with the court's orders and will not initiate litigation outside Arizona to change the custody or otherwise seek to modify the judgment of the court. Plaintiff contends in this respect the court acted unreasonably and abused its discretion,

"* * * for the reason that the record is devoid of evidence of any defiance of such orders on her part and for the further reason that the evidence shows such requirement to be an unrea-

sonable burden on a woman without income or property."

Plaintiff recognizes, as she must, that there is nothing unusual or extraordinary in requiring a bond or other security where there is a removal of a child from the jurisdiction of the court. The rule is well stated in 27 C.J.S., Divorce, § 313, page 1180,

"The court may require the parent given permission to remove the child from the state to give a bond or other security to insure its return, but the necessity therefor is a matter for the determination of the court on the facts of the case * * *."

See also, 17 Am.Jur., Divorce and Separation, section 676, and Annotation 154 A. L.R. 552, 562, and cases therein cited.

Naturally the reporter's transcript of evidence taken at the trial is "devoid of evidence of any defiance of such orders" because at that stage of the proceeding no orders had been entered. The court announced at the conclusion of the trial that judgment would be entered the next morning at 10 a. m., and "In the meantime, the plaintiff and child should stay here in the county seat." It is inconceivable that a litigant seeking a favorable ruling would jeopardize her chances for judgment by showing open contempt for the court or defiance of such rulings as it might make.

We have examined a number of cases treating with the requirement of a bond to

ensure compliance with the orders of the court as a condition of allowing removal of a minor from the state. Due regard must be had for the practical aspects of the situation: process of the courts of one state does not run into another state in any real sense, and no officer from the courts of one state armed with papers however valid there, has any authority to act in another state to enforce the decrees of the first state. It is possible that there may be a future determination that the best interests of the child require the custody decree to be changed and the child returned to the state of original jurisdiction, and unless some string be attached to the order permitting removal, the court must depend upon moral suasion and the party's concept of social duty, for the enforcement of its orders. In many cases this is leaning upon too slender a reed.

Some courts have considered the fact that the minor is going out of the state as itself sufficient justification for exercising the power to require bond. See Thompson v. Thompson, 213 Ark. 595, 212 S.W.2d 8; Schmidt v. Schmidt, 346 Ill.App. 436, 105 N.E.2d 117; Hedding v. Inman, 172 Kan. 567, 241 P.2d 479; Commonwealth ex rel., Fortunes v. Manos, 140 Pa.Super. 352, 13 A.2d 886; Taliaferro v. Ferguson, 205 Miss. 129, 38 So.2d 471; and dicta in Piccolo v. Piccolo, 251 Ala. 483, 38 So.2d 12. In other reported cases where security is required, in addition to the fact of taking the minor from the jurisdiction of the court, there is evidence raising a fair suspicion of real danger that the child might not be returned to the state if a bond were not exacted. See Ex parte Halvey, 185 Misc. 52, 55 N.Y.S.2d 761, affirmed upon appeal, 269 App.Div. 1019, 59 N.Y.S.2d 396; Commonwealth ex rel. Warner v. Warner, 156 Pa.Super. 465, 40 A.2d 886; Turney v. Nooney, 9 N.J.Super. 333, 74 A.2d 356 and further proceedings 21 N.J. Super. 522, 91 A.2d 418; Commonwealth ex rel. Balla v. Wreski, 165 Pa.Super. 6, 67 A.2d 595; Commonwealth ex rel. Strickland v. Strickland, 27 Pa.Super. 309; Campbell v. Lovgren, 175 Miss. 4, 166 So. 365; Mattox v. Mattox, 129 Okl. 301, 264 P. 898; Cf. Godbey v. Godbey, 70 Ohio App. 450, 44 N.E.2d 810; Osborn v. Osborn, 143 Neb. 1, 8 N.W.2d 444; Kenworthy v. Kenworthy, 197 Okl. 679, 174 P.2d 587.

The evidence in the instant case showed that prior to the separation of the parties the mother had taken the baby out of this state on at least one occasion without the knowledge or consent of the father. This, and other evidence apparent from a careful reading of the entire transcript convinces us the court was justified in concluding as it apparently did, that it was dealing with an emotionally immature, strong tempered young woman who was not wholly responsible. The trial court heard and saw all the parties and might well have formed a fair suspicion of real danger that the parent custodian might

not be amenable to a suasion purely moral when the time came to return the child to this state, and accordingly a bond was justified.

There is the contention that the facts of this case are so similar to those found in Grimditch v. Grimditch, 71 Ariz. 237, 226 P.2d 142, that the bond must be here struck down as it was there. However, a reading of the original opinion, Grimditch v. Grimditch, 71 Ariz. 198, 225 P.2d 489, together with the supplemental opinion cited, convinces us the dissimilarity of all the facts recited in the instant case and those found in Grimditch, justifies the difference in result.

As to the bond requirement being a hardship, and plaintiff being unable to give one, we believe she has failed in her burden of showing this, and that the evidence in the record does not compel such a conclusion. Originally after the bond was ordered there was no request for a hearing to show inability or hardship in furnishing it or in keeping it in force and effect. No one can deny the accomplished fact that plaintiff was able to furnish bond, for a continuing surety bond was given, approved, and filed on April 28, 1952. This court remains unenlightened as to the requirements demanded by her surety for its issuance, or the amount of the annual premium, and we therefore cannot say the record presents a clear picture of hardship. We hold there was justification for requiring a bond, and that a bond of $3,000

is not excessive and does no more than protect the rights of the defendant by securing compliance with the decree. If hardship should arise in the future, the matter can be brought to the attention of the trial court, which retains jurisdiction, for the entry of such orders as the circumstances may require.

■ Custody of the child was granted to plaintiff who, it was understood, intended to live with her parents in Los Angeles, and the judgment provided plaintiff should bear the expense of bringing the child to, and returning him from, Chandler, Arizona, for visits with his father. It is contended the court abused its discretion in thrusting this burden upon plaintiff when such visits are for the sole convenience of defendant and he was shown to be an employable school teacher, and plaintiff was shown to be without property or income.

It should be pointed out that visitorial rights are not for the sole benefit of one parent. In making custody decrees, the welfare of the child is ever paramount, and if such visits were not in the child's interests, they would not be ordered. Usually maintenance of the relation of parent and child is in the interest of both as well as of society. Children normally have the care, love, and companionship of both a father and a mother, and these visitorial rights are a makeshift provided by the law in lieu of the family relationship torn asunder by the parties.

418

However, it was advantageous to all parties concerned that plaintiff should return to California to live with her parents, and we believe that it was unfair and unjust for the lower court to require the wife to pay the expenses of returning the baby to Arizona for yearly visits as requested by defendant. The divorce was granted the wife because of the husband's acts. It would be unreasonable to expect this young, unattached woman to remain in Pinedale, where she had no interests nor ties of kin or affection. It appears that she had no roots in this state save the tie to her husband, which was severed. To defendant's great advantage her parents were ready, willing and able to provide a home for her and the child in Los Angeles. The father pays no alimony and but $50 a month as support for the child. Though the wife periodically acquired funds by gifts from her father, she was not gainfully employed, and was not possessed of income-producing property, and in the natural course of things the future travel expenditures would be made from the pockets of her parents, and reliance must be had upon the chimerical gift in futuro. We hold that under these circumstances it was an abuse of discretion for the court to require plaintiff to bear this expense.

■ In connection with this matter of payment of travel expense we have examined the cases cited by the parties, Commonwealth ex rel. Balla v. Wreski, 165 Pa.Super. 6, 67 A.2d 595; Johnston v. Johnston, 180 Ky. 439, 202 S.W. 869; Darnell v. Barker, 179 Va. 86, 18 S.E.2d 271; and Fagg v. Baker, 100 Fla. 1415, 131 So. 385. These cases only highlight the fact that the proceedings herein are equitable and each case turns on its own facts.

The judgment is ordered modified to provide that transportation expenses for the child's visits to the father shall be paid by the father, and as modified, the judgment is affirmed.

Affirmed in part, reversed in part.

PHELPS, C. J., and STANFORD, LA PRADE, and WINDES, JJ., concurring.